STATE OF NEBRASKA, EX REL. FIRST NATIONAL BANK
OF STANTON, NEBRASKA, V. H. E. OWEN ET AL.

FILED JUNE 27, 1894.    NO. 5623.

1. **County Boards:** DUTIES: DEPOSITORIES: APPLICATIONS:
   BONDS. Under the provisions of chapter 50, Session Laws of
   1891, it is the duty of the county board to act on the proposi-
   tions of each bank to become a depository of current funds of
   the county, as well as to approve the bond incident to that re-
   lation.

2. ———: ———: ———: MANDAMUS. The mere fact that a county
   treasurer has assumed to designate the bank in which he him-
   self shall deposit current funds of the county, and to fix the
   penal sum of the necessary bond, confers upon the bank desig-
   nated no right by *mandamus* to compel the county board to ap-
   prove the sufficiency of the sureties on such bond.

ORIGINAL application for *mandamus*.

*John A. Ehrhardt,* for relator.

*C. C. McNish, W. W. Young, A. A. Kearney,* and *Barnes
& Tyler, contra.*

RYAN, C.

This was an original application in this court, made in
1892, for a *mandamus* to compel H. E. Owen, F. P. Car-
roll, and John W. Tyler, county commissioners of Stanton
county, to approve a bond for the safe keeping of the current
funds of Stanton county. The county treasurer was made
a defendant, the prayer as to him being that, upon the ap-
proval of the bond above referred to, he should be required
to deposit the said funds with the relator, the First National
Bank of Stanton. This last prayer was entirely unnecessary,
for from the whole record, including briefs of counsel, it is
very evident that the said treasurer was exceedingly anx-

ious to make the deposit according to the relator's prayer. This county treasurer received the application of the relator, approved it and accepted it, provided a bond of $50,000 should be given and be accepted by the county board, and said board was immediately notified of this action of the treasurer. The case was referred for findings as to certain facts alleged to exist. The referee found, and it is uncontradicted, that the county treasurer was a stockholder and director of the relator. On the 12th of July, 1892, Mr. Pilger, the county treasurer, notified the relator that its proposition had been accepted. The Stanton State Bank, on the 14th of July, offered to pay for the privilege of keeping the deposits five per cent per annum, reckoned on the daily average balances. This was one and one-half per cent higher than had been offered by the relator. It was found by the referee that Mr. Carroll, one of the county commissioners, was a stockholder and director in the aforesaid Stanton State Bank, but it was also found that each of the two banks was solvent, and no doubt is suggested as to the sufficiency of the bond of either. The question presented is, whether or not the county commissioners should by *mandamus* be compelled to approve the bond tendered by the relator.

Chapter 50 of the Session Laws of 1891 requires the county treasurer of every county in this state to deposit at all times, and keep in deposit for safe keeping, in state or national banks, the amounts of the several current funds on hand. Payments are to be made as demanded by the county treasurer, on his check. The depository banks are required to pay for the privilege of keeping such deposits interest amounting to not less than three per cent per annum upon the amounts deposited, subject to such regulations as are imposed by law and the rules adopted by the county treasurer for holding and receiving such deposits. For the security of the funds deposited, the county treasurer is required to exact from the depository the giving of a bond

for the safe keeping and payment of such deposits and the accretions thereof, which bond shall run to the people of the county, and be approved by the county board, conditioned that certain statements shall be made, as well as payments, as required by the county treasurer. The making of profit, directly or indirectly, by the county treasurer upon the funds belonging to the county, or improper removal of the same, is made punishable by fine and imprisonment. So also is the county treasurer's willful failure or refusal to perform any act required of him by the provisions of the chapter under consideration. The last proviso in this act is in the following language: "Sec. 11. *Provided further*, That no treasurer shall be liable on his bond for money on deposit in bank under and by direction of the proper legal authority, if said bank has given bond." The relator asserts, in effect, that the proper legal authority under and by whose direction are to be made the deposits in bank is the county treasurer. The provisions which have any reference whatever to the duty of the county treasurer under this act have been set forth fully, and nowhere therein is there found any authority for him to direct in what bank deposit shall be made. It may be truly said that the act is silent as to this matter. In such event resort must be had to the law in force, independently of this particular statute. The general supervision of county affairs and finances, including the power to make orders respecting the property of the county, are intrusted to the discretion of the county boards of the several counties. (Sec. 23, ch. 18, Comp. Stats.) As there was no attempt by the provisions of chapter 50, Session Laws, 1891, to amend the section just referred to, it must be assumed that the reference to "proper legal authority" in section 11, chapter 50, aforesaid, was to the county board, except in so far as by law it was otherwise specially provided. It would be anomalous to hold that this section (11) recognized the county treasurer as the proper legal authority to

designate in what bank deposits should be made, when by the very fact of compliance with such requirement made by himself he is released from liability on his bond. As if to illustrate the practical working of such a construction, the county treasurer in this case seeks to have designated as the place of deposit a bank in which he is a stockholder and an officer. The act expressly provided that he should be punished if he made any profit, directly or indirectly, on any county money with the custody of which he was intrusted, and yet this court is asked upon his designation of the place of deposit to require the county board to enable him indirectly to make such profit, by approving the bond which he has seen fit to require. A *mandamus* will lie for no such purpose. It may be said that one of the county commissioners is a stockholder and director of the Stanton State Bank. He is refusing to act, however, and for this reason a proceeding in *mandamus* is being prosecuted as against him. If he is acting as a partisan of the Stanton State Bank, he is reflecting little credit upon himself as an officer of the county, and is very censurable. We are not justified in ascribing to him so base a motive, and even if we did, there are two other members of this board and they could be safely trusted to act,—at least the statute devolves the duty upon a majority of the county board. The presumption is that they will perform their duty according to law, and upon them must devolve this responsibility. The relator has shown no reason whatever for the issue of the writ prayed and it is accordingly denied.

WRIT DENIED.