STATE OF NEBRASKA, EX REL. FIRST NATIONAL BANK OF ATKINSON, V. DANIEL J. CRONIN, TREASURER OF HOLT COUNTY, NEBRASKA.

F LED NOVEMBER 16, 1904. No. 13,664.

1. **Act Constitutional.** The act of 1903, amending sections 18 and 20 of article III, chapter 18, and section 3a of article XIII, chapter 83 of the Compiled Statutes of 1901, so far as it relates to the deposit of county funds, was constitutionally adopted and is a valid law.

2. **County Funds, Deposit of.** Under the law as thus amended it is the duty of each county treasurer to keep at all times on deposit in each of the depository banks of his county such a proportionate share of the public money subject to deposit as the amount of the paid up capital stock of each bank bears to the whole amount of paid up capital stock of all of such banks.

3. **Mandamus** will lie to compel such officer to perform his duty, and comply with the provisions of said law.

ORIGINAL application for a writ of mandamus to compel respondent to deposit in relator bank its pro rata share of the county funds. *Writ allowed.*

*R. R. Dickson,* for relator.

*Arthur F. Mullen* and *M. F. Harrington, contra.*

BARNES, J.

On the 5th day of April, 1904, the relator, the First National Bank of Atkinson, filed its application in this court against the respondent, Daniel J. Cronin, as treasurer of Holt county, praying for a peremptory writ of mandamus to compel the respondent to deposit in the relator bank its pro rata share of the funds of Holt county, as provided by section 18, article III, chapter 18, Compiled Statutes, 1903 (Annotated Statutes, 10870). An alternative writ was allowed, returnable May 3, 1904, and on that date the respondent filed his answer herein, by which he practically admitted the allegations of the alternative writ, but alleged that the law in question was never constitutionally passed by the legislature, and was therefore void. For that reason respondent prayed that the alternative writ be quashed, and the action dismissed.

From an examination of the pleadings and the stipulation on which the case was submitted, there appears to be no dispute as to the facts. The record discloses that there are in Holt county 11 banking institutions, with an aggregate paid up capital of $203,500; that all of said banks, including the relator, have been selected by the county board of supervisors as county depositories; that they have all given bonds, which have been approved, as required by law, and, if the act in question is valid, each one of the said banks is entitled to receive on deposit its pro rata share of the county funds; that before and at the time of the commencement of this action the respondent had refused to carry out the provisions of the law, and that the relator had on deposit at that time only $3,759.24 of the said funds, when its pro rata share thereof was $8,697.55. So it may be said at the outset that, unless the contention of the respondent as to the invalidity of the

law in question is sustained, the relator was entitled to the relief prayed for by its petition.

An examination of the legislative journals shows, and in fact the pleadings and stipulation state, that the law which is the basis of the relator's right of action was passed by the legislature of 1903, and was known as house roll No. 136. It was introduced in the house under the following title: "A bill for an act to amend sections eighteen (18) and twenty (20) of chapter eighteen (18), article three (3) of the Compiled Statutes of Nebraska of 1901, and to repeal the said original sections." It was read the first time on the 16th day of January, 1903; the second time on the 19th day of January, and referred to the committee on county boundaries, county seats and township organizations. On the 25th day of February the bill was read the third time, put upon its passage and received the necessary constitutional number of votes to pass it with the emergency clause. The bill was then sent to the senate, where it was read the first time on the 26th day of February; the second time on the 27th day of that month, and it was then referred to the committee on counties and county boundaries. On the 5th day of March it was reported back to the senate by the committee, under the same title by which it had been read three times in the house and twice in the senate, with the recommendation that it be passed. Thereafter it was amended in the committee of the whole and referred back to the senate, with the recommendation that it be recommitted to the judiciary committee; that committee recommended that the title be amended so as to read as follows: "A bill for an act to amend sections eighten (18) and twenty (20) of article three (3) of chapter eighteen (18) and section 3a of article thirteen (13) of chapter 83 of the Compiled Statutes of Nebraska for 1901 and to repeal said original section." The body of the bill was also amended so as to include an amendment of section 3a, article XIII, chapter 83 of the Compiled Statutes of 1901, and thus extend its provisions to the deposit of public money by the state

State v. Cronin.

treasurer in depository banks. The bill was thereupon read in the senate the third time, was put upon its passage, and received 31 votes, which were more than the number sufficient for its passage, with the emergency clause. It was thereafter reported back to the house with the request that the house concur in the senate amendments. It was then read in the house, and the senate amendments were concurred in. It was afterwards properly signed by the presiding officers of the house and senate, and regularly approved by the governor.

It is the contention of the respondent that the bill in question was not read in the house of representatives on three different days with the identical title that it bore at the time of its introduction; and the argument of respondent's counsel proceeds on the assumption that the title and body of the bill, as changed by the senate amendments, must have been read at large on three different days in each branch of the legislature after the adoption of such amendments, before it could be said that the bill was constitutionally passed. Respondent further assumes that the change in the title was a substantial one. Both of these assumptions are unwarranted. It is true that by section 11, article III of the constitution, it is provided:

"Every bill and concurrent resolution shall be read at large on three different days in each house, and the bill and all amendments thereto shall be printed before the vote is taken upon its final passage. No bill shall contain more than one subject, and the same shall be clearly expressed in its title. And no law shall be amended unless the new act contain the section or sections so amended and the section or sections so amended shall be repealed."

But this provision was not intended to prevent amendments and corrections of mistakes in the title of bills pending before the legislature; and it is not believed that any authority can be found which supports respondent's position. It has never been held by this court, nor by any other, so far as we have been able to ascertain, that it is not competent for the legislature to correct defects or

imperfections in the title of a bill, or amend it, at any time before it is put upon its final passage. As was said in *Richards v. State,* 65 Neb. 808:

"The constitution requires that the subject of the bill shall be expressed in its title, but no law has ever been annulled because it passed through some of the earlier stages of legislation under an imperfect title. The title is amendable as well as the body of the bill, and it is in accordance with accepted canons of legislative procedure to amend it at any time before final action is taken."

In *Attorney General v. Rice,* 64 Mich. 385, the court said:

"If the object of the act as passed is fully expressed in its title, the form or status of such title at its introduction, or during any of the stages of legislation before it becomes a law, is immaterial. To hold otherwise would, in many cases, prevent any alteration or amendment of a bill after its introduction, as, in legislative practice, it frequently becomes necessary to amend the title as introduced in order to conform to changes in the bill."

In *Cleland v. Anderson,* 66 Neb. 252, we said:

"Section 11, article 3, of the constitution, does not require that amendments made to a bill while under consideration by the legislature be read at large before each house on three different days; but it is sufficient that such amendments be printed, as required by said section, and that the bill, as amended, be adopted by both houses."

That the course above indicated was pursued by the legislature in passing the bill in question is conclusively shown by the journals of that body.

Again, the change of the title, except as to the clause which relates to section 3a, above mentioned, was not material. The title to the bill, as introduced, was, "A bill for an act to amend sections eighteen (18) and twenty (20) of chapter eighteen (18) of article three (3) of the Compiled Statutes of the state of Nebraska of 1901, and to repeal said original sections"; and the change effected by the legislature, leaving out of consideration that part

of the title as finally agreed to which treats of section 3a, article XIII, chapter 83, was simply to transpose a part of it so as to read, "article 3 of chapter 18," instead of "chapter 18 of article 3." No one could have been misled by the title to the bill, as originally introduced, because the slightest investigation would inform any one what particular sections of the statute were to be amended thereby.

The respondent further assails the bill on the ground that the senate amendment thereto was not germane to the two sections mentioned in its original title, and was not embraced therein. Conceding that this objection is well taken, which need not be determined in this action, that part of the act which relates to the deposit of county funds is valid and must be upheld. It seems clear that so much of the bill as relates to the deposit of state funds by the state treasurer may be rejected without affecting that part of the law covered by the original title. Where this can be done, so much of the law as is valid will be upheld. *State v. Stuht,* 52 Neb. 209; *State v. Stewart,* 52 Neb. 243.

We therefore hold the act in question, so far as it relates to the matter in controversy in this case, was constitutionally adopted, and is a valid law. As no other defense was interposed to the issuance of a peremptory writ, it follows that the relator at the time of the commencement of this action was entitled to the relief prayed for, and a peremptory writ of mandamus is awarded in accordance with the prayer of the relator's petition.

WRIT ALLOWED.