JOHN A. MILLER, APPELLANT, v. GREAT WESTERN COMMIS-
SION COMPANY, APPELLEE.

FILED MAY 14, 1915.    No. 18090.

1. **Sales: CUSTOM: PRESUMPTION.** A principal who deals in a market
   must be presumed to deal according to the custom of that market,
   thus making that custom a part of his contract.

2. ——— : ——— : ——— : **REBUTTAL.** This presumption may gener-
   ally be rebutted, but not where the person with whom he deals,
   without knowing the other to be ignorant of the usage, has per-
   formed the contract in accordance therewith.

3. **Appeal: HARMLESS ERROR: ADMISSION OF INCOMPETENT EVIDENCE.**
   When under the competent evidence the defendant is entitled to a
   verdict in his favor, any error of the court in admitting incom-
   petent evidence is immaterial.

4. **Evidence: SUFFICIENCY.** Under the evidence in this case the court
   should have instructed the jury to find a verdict in favor of de-
   fendant, and therefore a judgment in defendant's favor will not be
   reversed upon appeal.

APPEAL from the district court for Douglas county:
GEORGE A. DAY, JUDGE. *Affirmed.*

*C. W. De Lamatre,* for appellant.

*P. A. Wells, contra.*

SEDGWICK, J.

This is an action to recover the net proceeds of a car-
load of sheep transported from Kearney to South Omaha,
March 14, 1911, for sale at the stock-yards. Cyrus A.
Black, a stockman of Kearney, was consignor, and he trans-
ferred his claim to plaintiff, March 22, 1911. Defendant
was the consignee, a corporation engaged in the live stock
commission business at South Omaha. The validity and
amount of the claim are admitted, but payment is pleaded
as a defense. In 1910 Black bought from defendant two
car-loads of sheep, and for the purchase price gave a note
secured by a mortgage on the stock purchased. In Febru-

ary, 1911, he shipped a car-load of sheep to defendant for sale, and the net proceeds were applied on his note. Another car was consigned to defendant March 14, 1911, and with the proceeds from the sale of the sheep the note was paid in full, leaving a credit of $620.94 in Black's favor. To recover this sum the suit was brought. In the answer it is alleged, among other things, that defendant on March 14, 1911, through the Packers National Bank of South Omaha, remitted $620.94 to the Commercial National Bank of Kearney for the credit of Black, and that at his request it was applied upon a debt due from him to the Commercial National Bank of Kearney. Payment of the amount due Black was denied by plaintiff in a reply to the answer. There was a general verdict in favor of defendant, and from a judgment thereon plaintiff has appealed.

When the defendant had sold the sheep for Black and had this money in hand, the defendant sent the money to the Kearney bank as payment to Black. If this was good payment, the plaintiff of course cannot recover. The evidence was without contradiction that it was then, and had been for a long time, the custom of the commission men of South Omaha, when they made sales for parties in another town, to remit at once to the bank where the party entitled to the money transacted his business. There was no conflict in the evidence upon this point. The defendant sent the account sales to Black, showing that the money had been sent for him to the Kearney bank. Black went immediately to the bank, and was told that the money had been received and put to his credit, and had been applied upon a note which he owed at the bank. Black testified that he objected to the bank applying it on the note, but he does not testify that he made any objection to the sending of the money to the bank as payment by the defendant. Afterwards Black assigned his supposed claim against the defendant to the plaintiff, Miller. In the meantime he had made no demand upon the defendant, nor in any way questioned the right to pay him by sending the money to his bank. Miller paid $50 for the claim of nearly $700, and

then Miller brought this action against the defendant. Black testified in regard to the transaction. He admitted that there were three Black brothers, and that there was a firm entitled Black Brothers that had been doing business of this kind some years before and had shipped to these defendants. He testified that the other two brothers composed the firm, but admitted that he had worked with them, and also it appears in the evidence that the defendant supposed they were dealing with Black Brothers, as they had formerly dealt, when they sold these sheep to Black, and when they again sold them for him on the South Omaha market, and, although Black must have known of these transactions, he did not deny that he knew that the defendant supposed the dealing was with Black Brothers, as it had been before that time. Black did not deny that he knew of the custom of making remittances in this way. Under the circumstances, when the plaintiff knew that such a custom existed and used Black as a, witness, if Black did not know of this custom the plaintiff should have proved that fact.

Professor Jones says: "A principal who deals in a market must be presumed to deal according to the custom of that market, thus making that custom a part of his contract." 2 Jones, Law of Evidence (1st ed.) sec. 465. In Encyclopedia of Evidence it is said: "Parties who are engaged in a particular trade or business, or persons accustomed to deal with those engaged in a particular business, may be presumed to have knowledge of the uniform course of such business; and one may be bound thereby, though ignorant, unless the other party be shown to have knowledge of his ignorance thereof." 3 Ency. of Evi. 953.

It would seem, then, that Black, in dealing with these commission men, was bound to know the custom, and if he did not want the money paid to him by remitting it to this bank he should have so instructed the defendant. He does not contend that he ever raised any such question with the defendant. Again, the defendant had a right to presume that Black knew of this custom, and, unless the defendant knew that he was ignorant of the custom, Black would be

Miller v. Great Western Commission Co.

bound by it, if the defendant performed the contract in accordance with the custom before they knew that Black was ignorant of it. "This presumption may generally be rebutted, but not where the person, without knowing the other to be ignorant of the usage, has performed the contract in concordance therewith." 3 Ency. of Evi. 954.

This defendant acted in good faith, and paid Black for this stock as there was reason to suppose he wanted to be paid, and as the law allowed payment to be made. He never questioned the right to do so until he found after-wards that this plaintiff would pay him a small sum for his supposed claim, and the court would be justified under this evidence in instructing the jury to find a verdict, as they did find, for the defendant. It is therefore not necessary to discuss the alleged error of the court in admitting the cashier's letter in evidence.

The judgment of the district court is

AFFIRMED.

HAMER, J., not sitting.

ROSE, J., dissenting.

One of the assignments of error assails a ruling admitting in evidence a letter containing these words:

"Replying to yours of March 22, relative to C. A. Black credit, will say that we received said credit March 16th, and applied it on Mr. Black's note by his request."

The letter was dated March 23, 1911. It was written by R. D. Garrison, cashier of the Commercial National Bank of Kearney, to the Packers National Bank of South Omaha. The writer of the letter died before it was offered at the trial. In attempting to justify the ruling of the trial court, it is argued by defendant that the evidence was properly admitted as a part of the *res gestæ*. The statement that the credit was applied on a note at the request of Black was hearsay. The application of the credit was made March 16, 1911. The letter was dated seven days later. In the absence of a statute, the death of a person who made the statement sought to be proved does not of itself make hearsay testimony admissible. *Shold v. Van*

Miller v. Great Western Commission Co.

*Treeck*, 88 Neb. 80; 2 Wigmore, Evidence, sec. 1576. The statement was clearly too remote in point of time to be admissible as a part of the *res gestœ*. *Union P. R. Co. v. Elliott*, 54 Neb. 299. Moreover, the duty of the cashier in receiving funds for Black, in giving him credit therefor, and in reporting what had been done in those respects, was limited to the transaction in hand. Subsequent statements about collateral matters concerning the funds, after the credit had been given, and what Black thereafter said to do with them were not elements of the settled transaction between the two banks, and are not parts of the *res gestœ*.

It is argued by defendant that it was the duty of the Commercial National Bank of Kearney in the regular course of business to acknowledge Black's credit, and that the acknowledgment is admissible as part of the *res gestœ*. Jones, Evidence (2d ed.) sec. 319, is cited on this point, but the text answers the argument as follows: "The entries to be thus admissible should be contemporaneous with the act to be proved; that is, within so short a time thereafter as reasonably to be considered a part of the transaction, in the due discharge of duty and by persons having knowledge of the facts."

I dissent from the proposition that, with this letter excluded, the evidence would have justified a peremptory instruction in favor of defendant. The commission company, after the sale of the sheep, owed the former owner, Cyrus A. Black, the net proceeds. Its duty and the law itself required payment to him. Payment is not shown by undisputed evidence as a matter of law. As between the parties defendant acted as a fiduciary. Its principal was not a member of the firm of Black Brothers. It is not shown, as a matter of law, that defendant had knowledge of the customs of that partnership. The manner of dealing with consignments at the stock-yards did not necessarily extend to transmitting the net proceeds of a sale to an individual shipper not shown to have had actual knowledge of existing customs or to have received a former payment in accordance therewith.

The rule of law applicable to this case was stated by Judge Van Fleet as follows: "A custom to avoid an otherwise controlling rule of law must be clearly established, and the party sought to be bound thereby must either have imparted to them actual knowledge of its existence, or it must be a usage so general and well-known in the community as to give rise to the presumption of such knowledge." *Smith v. National Bank of D. O. Mills & Co.*, 191 Fed. 226.

According to Judge McCormick, the principle controlling the vital question in this case is as follows: "Whether a trade custom or usage is established by the evidence in a case, and, if so, whether it was known to a party contracting, or was so general and well established that he must be presumed to have known of and contracted with reference to it, are questions for the jury." *New Roads Oilmill & Mfg. Co. v. Kline, Wilson & Co.*, 154 Fed. 296.

To the same effect: *Bacon Fruit Co. v. Blessing*, 122 Ga. 369; *Swern v. Churchill*, 155 Ill. App. 505; *Union Stock Yards Co. v. Westcott*, 47 Neb. 300; *Milwaukee & Wyoming Investment Co. v. Johnston*, 35 Neb. 554; *Bixby v. Bruce*, 69 Neb. 78. In the last case cited it was said: "One not shown to have knowledge of a trade usage confined to a particular business, which is not shown to be of such a general and notorious character that he must have been presumed to have contracted with reference to it, is not bound by such usage."

The opinion of the majority carries custom too far, allows a commission merchant to escape with too little responsibility, and invades the province of the jury. In the view most favorable to defendant, the defense of payment was an issue of fact for the determination of the jury. In the letter erroneously admitted, the hearsay statement of the cashier related to a vital issue. It may have been the controlling factor resulting in the verdict for defendant. The error was prejudicial to plaintiff, and he is entitled to a new trial. The judgment should be reversed.