J. J. SHAMBAUGH, COUNTY TREASURER OF BUFFALO COUNTY, APPELLANT, V. CITY BANK OF ELM CREEK, APPELLEE.

FILED JULY 19, 1929. No. 26829.

*E. G. Reed,* for appellant.

*John A. Miller* and *E. L. Randall, contra.*

Heard before DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK and SHEPHERD, District Judges.

EBERLY, J.

This is an action at law instituted by the county treasurer of Buffalo county against the City Bank of Elm Creek. It appears conceded in the record that the City Bank of Elm Creek was a county depository of Buffalo county, duly designated as such, and had given the bond as provided by law to secure the deposit of public funds. Issues were joined, a jury waived, and trial to the court on an agreed stipulation of facts. The district court found for defendant and dismissed plaintiff's action. Plaintiff appeals.

The basis of the action was a deposit of public funds made by the plaintiff in his official capacity on the 11th day of May, 1927, which was represented by a check of $5,000 drawn by the plaintiff in favor of the defendant and upon the Farmers State Bank of Kearney, likewise a county depository of Buffalo county, and in which public funds were then on deposit, more than sufficient to cover the aforesaid check. The correct statement of facts upon which, in connection with the pleadings in the case, the cause was determined in the court below is as follows:

"It is stipulated and agreed that the only item in dispute in this case is the item of May 11, 1927, of $5,000; that if the same is recovered the rate of interest is two per cent. from May 11, 1927.

"That on May 11, 1927, the plaintiff drew a check on the Farmers State Bank of Kearney, Nebraska, for $5,000 and sent the same by mail to the defendant for credit as a de-

posit of public funds belonging to Buffalo county; that plaintiff had sufficient funds in the Farmers State Bank to pay the same, and said bank was a solvent bank; that the same was received at Elm Creek in the afternoon of said day by the defendant, and as a receipt the defendant issued a duplicate deposit ticket, a copy of which is set out in full in the reply of the plaintiff filed in this case, which duplicate deposit ticket was received by the plaintiff on May 12, 1927, and retained by him in the files of his office, he making no reply thereto; that copy of this duplicate deposit ticket is as follows:

"Deposited in Old City Bank of Elm Creek, Acc't, County Treasurer, J. J. Shambaugh.

"Checks and cash items are credited only subject to payment. This bank in making collections received from its customers, whether same be placed to their credit or not, acts only as their agent, and assumes no responsibility except to exercise the same diligence it uses in making collections of its own.

"Elm Creek, Nebraska, May 11, 1927.

"Currency

"Silver

"Checks Far. State Kearney $5,000.00.

"By mail     Thank you.     L. M. Bliss

"Bliss     Total deposit ————."

That a copy of the check is set forth in the reply filed in this case and is as follows:

"Farmers State Bank                                No. 126

"J. J. Shambaugh, Treasurer Buffalo County, Neb.
            "Kearney, Neb., May 11, 1927.

"Pay to the order of City Bank, Elm Creek_____$5,000.00

Exactly Five Thousand Dollars, Exactly, Exactly, Exactly, Exactly. Deposits of this bank are protected by the depositors' guaranty fund of the state of Nebraska.

"To Farmers State Bank, Kearney, Neb., 76-41

"J. J. Shambaugh, Treasurer, By_____,
                              "Deputy Treasurer."

That said check bears the following indorsements thereon, to wit:

"Farmers State Bank—Paid May 13, 1927, Kearney, Nebraska.

"Pay to the order of any Bank or Trust Co. All prior indorsements guaranteed. The City Bank of Elm Creek, Nebraska—76-878, Earl E. Bliss, Cashier.

"The City National Bank, Teller 1, May 13, 1927, Kearney, Nebraska.

"Pay any bank or banker. All prior indorsements guaranteed. May 12, 1927. Stock Yards Nat'l Bank, 27-6 South Omaha, Nebr. 27-6. W. H. Dressler, Cash."

"That the defendant bank in this case had for many years prior thereto, and then had, for its correspondent the Stock Yards National Bank of Omaha, Nebraska, and on the 11th day of May, 1927, together with other items of exchange mailed said check to the Stock Yards National Bank of Omaha for collection and credit; that the same was received by the Stock Yards National Bank on the 12th of May, 1927; that on the same day the Stock Yards National Bank sent this check with another item to City National Bank in Kearney for collection and remittance; that on the 13th day of May, 1927, the City National Bank in Kearney took the check of $5,000 in dispute, together with other checks it held drawn upon the Farmers State Bank of Kearney, and met with the Farmers State Bank of Kearney to make a clearing, that is, an exchange of checks, and delivered to the Farmers State Bank of Kearney all the checks it then had on the Farmers State Bank of Kearney, and received from the Farmers State Bank what checks the Farmers State Bank had on the City National Bank, and was then indebted to the Farmers State Bank for which difference the City National Bank then gave the Farmers State Bank a draft on Omaha; that after making the clearing the City National Bank in Kearney on May 13, 1927, drew a draft on the Omaha National Bank of Omaha in favor of the Stock Yards National Bank of Omaha for the total amount of the items included in the remittance letter

of May 12, 1927, above referred to, and mailed the same to said bank; that the draft was received by the Stock Yards National Bank at Omaha on May 14, 1927, and presented by said bank at the Omaha clearing house on May 14, 1927, and payment refused.

"That the City National Bank in Kearney has suspended business and was taken possession of by a national bank examiner under the direction of the comptroller of the currency at about 8 o'clock a. m. on May 14, 1927, and on said day a receiver was appointed and has ever since been in the possession of a receiver appointed by the comptroller, and then was and is now insolvent; that on the morning of May 14, 1927, and before the opening hours for banks in Omaha, the Omaha National Bank was notified by the receiver to pay no drafts drawn on it by the City National Bank in Kearney, and the payment of said draft drawn by City National Bank in Kearney was by the Omaha National Bank refused and is still unpaid. That on May 13, 1927, when the City National Bank in Kearney issued its draft of $5,025 to the Stock Yards National Bank of Omaha upon the Omaha National Bank it then had on deposit in the Omaha National Bank $7,494.18; and the Omaha National Bank when notified by the receiver to pay no drafts refused to pay said draft of $5,025 and at once offset said balance of $7,494.18 against bills payable of City National Bank in Kearney, which it, the Omaha National Bank, then held against the City National Bank in Kearney, and the Stock Yards National Bank at once notified the City Bank of Elm Creek that no funds had been received by it on account of said $5,000 check and that it had no credit for the same. That upon receipt of said notice the City Bank of Elm Creek at once notified the plaintiff that it had been unable to make collection of said check, and that the amount was charged back to his account, and that the books of the City Bank of Elm Creek show nothing due to plaintiff. That on the books of plaintiff he is carrying said amount as being a deposit in City Bank of Elm Creek. That on

the 13th of May, 1927, when the Farmers State Bank of Kearney received said check of plaintiff from City National Bank in Kearney it charged the same to the account of plaintiff, so that the credit of plaintiff in the Farmers State Bank of Kearney was reduced in the sum of $5,000.

"That the Stock Yards National Bank of Omaha used proper care in handling said item. That the plaintiff in this action was a depositor in the City Bank of Elm Creek from the time he began his term of office in January, 1927, up and until the time of the matters involved in this action, and that all items deposited as set forth in his petition except this item of $5,000 were by plaintiff checked out of said defendant bank before this suit was begun. That the plaintiff made demand on defendant for said item of $5,000 in proper form before bringing this suit and payment thereof was refused by defendant. That this suit is begun by direction of the board of supervisors of Buffalo county, Nebraska.

"That in the month of May, 1927, and long prior thereto and up to the present time there had existed a custom with the defendant and with other banks generally through Buffalo county and this part of the state of Nebraska, when they received checks on banks outside of the town in which said bank is located, to send such items to their Omaha correspondent for collection and credit as defendant did in this case, and that such items as are not collected are charged back to the customer, but that this plaintiff has never had an item of this character charged back to his account except this item in dispute in this case. That the banks do not accept business except on this basis, but that no discussion of this matter was had between the plaintiff and the defendant. That prior to the 11th of May, 1927, the plaintiff had issued other checks on Kearney banks, including the Farmers State Bank in Kearney, which had been collected through the defendant bank in the same manner as this check was collected and indorsed in the same manner, and charged to his account at the Kearney banks,

but that at the time of drawing said check of $5,000 plaintiff did not think of such fact, and probably when the prior paid checks had been returned from his Kearney bankers did not personally examine the indorsements of them and did not know the manner in which they had been collected.

"That neither the plaintiff nor the defendant, nor the Farmers State Bank of Kearney, nor the Stock Yards National Bank of Omaha, knew of the failing condition of the City National Bank in Kearney, nor had reason to believe it was insolvent and likely to close.

"It is further stipulated that the city of Elm Creek in which the defendant bank is located is situated a distance of approximately sixteen miles west from the city of Kearney in which the Farmers State Bank (the bank on which the check in dispute was drawn) is located; that both cities are on the main line of the Union Pacific Railroad Company; that they are both on the Lincoln Highway, a main highway passing through the state of Nebraska; that several trains carrying mail, express and passengers pass between the two cities daily; that the county treasurer of Buffalo county, Nebraska, the plaintiff in the above entitled matter, could have transferred the deposit to the defendant bank in cash or currency by the modern means of conveyance between the two points within the period of one hour's time, or the defendant bank upon receipt of the plaintiff's check in controversy could have made presentment on the same direct to the bank in Kearney upon which it was drawn and it would have been paid, in like time."

The defense of the Elm Creek bank which was sustained in the district court and relied upon here is buttressed upon the proposition that "A custom which is uniform, long established, and generally acquiesced in, and so widely and generally known as to induce the belief that the parties contracted with reference to it, is binding without proof of actual notice thereof to the parties." *Union Stock Yards Co. v. Westcott,* 47 Neb. 300; *Miller v. Great Western Commission Co.,* 98 Neb. 392. And, also, that custom and usage

of the bank in the manner of making collections and doing business will bind persons dealing with it whether the usage and custom is known to them or not. And that by "custom of banks" checks were not receivable as a general deposit but exclusively as a "collection and credit" transaction.

As applied to the facts in the present case, the force of the precedents cited may justly be said to be doubtful. In the *Westcott* case this court announced the principle that "Proof of knowledge is required to give effect to a custom, unless it is so widely and generally known, and so well established, as that knowledge thereof may well be presumed."

A stipulation heretofore quoted conceded that the county treasurer had no actual knowledge of the claim of "custom," and it is very doubtful whether it contains facts sufficient to justify the conclusion that the "custom" relied on was so widely and generally known "that knowledge" of such custom "may be presumed." The last pronouncement of this court on this subject of "customs of banking" appears in *Harrison State Bank v. First Nat. Bank*, 116 Neb. 456. In this case the rule announced by Thompson, J., in behalf of a unanimous court is: "It is incumbent upon one relying on a special custom as a basis for recovery, not only to allege and prove such custom, but also to prove that the person sought to be bound thereby had knowledge thereof and contracted in reference thereto."

The case of *Miller v. Great Western Commission Co.*, 98 Neb. 392, also relied upon by the bank, can have no application to the present case. Here we have as parties to the proceeding a county treasurer and a county depository; their respective obligations and duties imposed by virtue of statutory and express contractual provision pursuant thereto rendering controlling the following principles:

"Where an officer's duties are prescribed by statute, usage will not excuse their discharge in a different manner. So proof of a custom is not permissible to enlarge the powers

of officers whose authority is defined by statute." 17 C. J. 476, sec. 37.

The principle thus generally announced was as applicable to a city treasurer (an analogous relation) expressed by this court as follows: "A custom or usage repugnant to the commands of a statute will not prevail against such statute." *Bolln v. State*, 51 Neb. 581.

The county treasurer is a creature of statute and the source of his powers are limited thereto. With reference to public funds, the powers and duties of this official, as well as the public policy which controls with respect to the custody of public funds, are reasonably definite and certain. By section 4964, Comp. St. 1922, it is provided:

"It shall be the duty of the county treasurer to receive all money belonging to the county, from whatsoever source derived, and all other money which is by law directed to be paid to him. All money received by him for the use of the county shall be paid out by him only on the warrants issued by the county board according to law, except where special provision for the payment thereof is or shall be otherwise made by law."

His sole authority for deposit of public moneys in banks is to be found in sections 6191 to 6196, Comp. St. 1922. It is to be noted by section 6194: "The removal by the county treasurer or by his consent of such money or a part thereof out of the vault of the treasurer's department or any legal depository of the same, except for the payment of warrants legally drawn or for the purpose of depositing the same in the banks selected as depositories under the provisions of this article shall be deemed a felony."

These sections further require the depository bank "to give bonds for" such deposits and accretions thereof, and also provide that "No treasurer shall be liable on his bond for money on deposit in bank under and by direction of the proper legal authority if the bank has given a bond." Section 6196.

Summarizing, it may be said that the public policy evi-

denced by the legislation last referred to is to the effect that the county treasurer is strictly enjoined to keep public funds in his possession either in the vaults of his office or in a legal depository. Under the terms of the statute referred to there can be no other lawful custodian, and the provisions thereof definitely contemplate that the deposits thus made with the official depository shall be in the form of general deposits. It is true that a deposit in a bank made in the ordinary course of business is presumed to be a general deposit. "When money is so deposited, it ceases to be the money of the depositor, and becomes the money of the bank, and the depositor becomes a creditor of the bank to the extent of such deposit." *Harrison State Bank v. First Nat. Bank, supra.* And this conclusion is necessary in order that the returns of interest to which the county was entitled should be received.

In addition to this, the transaction before us was not one which is made in the ordinary course of banking, but it is one authorized solely by the provisions of the statute under consideration.

"A county treasurer is the custodian of the funds of his office and it is for him, within the provisions and restrictions of the depository act, to deposit and withdraw, as the requirements in the discharge of his official duties shall make necessary, all the funds coming into his custody as such treasurer." *State v. Whipple,* 60 Neb. 650.

In discharging his duties under the depository law it is "The duty of each county treasurer to keep at all times on deposit in each of the depository banks of his county such a proportionate share of the public money subject to deposit as the amount of the paid-up capital stock of each bank bears to the whole amount of paid-up capital stock of all of such bank," and "mandamus will lie to compel such officer to perform his duty, and comply with the provisions of said law." *State v. Cronin,* 72 Neb. 636.

For this purpose, in the instant case, the plaintiff treasurer admittedly tendered for general deposit a check, copy

of which appears in the stipulation. It was wholly for the benefit of the defendant, and it was a transaction in strict compliance with the depository act and having no other source of authority. Being wholly statutory, general customs of banks, under the decisions already cited, could have no application to the transaction whatever. The rights of the public represented by the county, and the rights of the bank as a public depository of public funds are defined and enumerated in the public statutes, and were not subject to modification either by the force of general customs of banking, or by parole modification, as attempted on part of the bank by the return of a duplicate deposit slip containing terms not contemplated by and repugnant to the controlling statute. This act on part of the bank was wholly unavailing, not only because of failure of proof of actual knowledge on part of the county treasurer of the custom involved, because of his lack of consent thereto, but because of lack of inherent power in the parties concerned to circumvent the public policy evidenced by the provisions of the depository act.

It follows, therefore, that the deposit in question was a general deposit; the ownership of the check was vested in the Elm Creek bank; and it was not a collection and credit transaction in any sense of the term; and the subsequent loss of the proceeds thereof was the loss of the bank, and not of the county of Buffalo.

The district court erred in finding to the contrary and in entering a judgment in favor of the bank. It follows, therefore, that the action of the district court in sustaining the defenses of the bank and entering judgment in its behalf is erroneous and is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED.

Note—See Customs and Usages, 17 C. J. 476 n. 90, 91, 517 n. 96, 518 n. 9.