GARFIELD COUNTY, APPELLEE, V. JESSE L. PEARL ET AL., APPELLANTS.

295 N. W. 820

FILED JANUARY 10, 1941.   No. 30865.

*Kennedy, Holland, De Lacy & Svoboda* and *B. A. Rose,* for appellants.

*W. F. Manasil, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and TEWELL, District Judge.

MESSMORE, J.

This is an action by the county of Garfield against Jesse L. Pearl, its former treasurer, and his bondsman, Massachusetts Bonding and Insurance Company, to recover funds on deposit in the First State Bank and the Farmers Bank, Burwell, Nebraska, said banks having been found insolvent and taken over by, and placed under the control of, the banking department of the state of Nebraska, which funds the county alleged were deposited in said banks contrary to law.

The amended petition reflects the following: Jesse L. Pearl was elected treasurer of Garfield county November 4, 1930, for a term of four years, commencing January 8, 1931, and on January 5, 1931, Jesse L. Pearl, as principal, and defendant bonding company, as surety, executed an official bond in the sum of $20,000, which bond was delivered by Pearl to, and filed in the office of, the county clerk of Garfield county, and approved by the county commissioners of said county January 7, 1931. Subsequent to such date Pearl became the duly qualified and acting treasurer of the county. On January 7, 1931, the county commissioners met, and addressed to them appeared a request of the First State Bank and the Farmers Bank of Burwell to be designated as depositories for county funds. The

First State Bank offered as security for such deposits $25,000 in mortgage bonds, to charge $10 per thousand on such bonds, payable quarterly. The Farmers Bank made a like request, offering good bankable notes of the bank to the amount of $25,000. The county commissioners, by resolution, designated the two banks as county depositories, requiring them to comply with the law of Nebraska in securing such deposits, and, unless the banks furnished corporate surety bonds, that each was to deposit not less than $3,500 each of United States government or federal farm loan bonds, and that the balance of the security be such as provided by the laws of Nebraska, and instructed and authorized deposit in the banks of county funds equaling 80 per cent. of the bonds so deposited as security, and the full amount of corporate surety bonds if the same are furnished by the banks.

On the same day the county board reconsidered the matter of county depository banks upon the suggestion and statement of the banks that they were not in a position to secure corporate surety bonds and did not have sufficient government or federal farm loan bonds to cover the full amount of the deposit. The banks offered to secure the county deposits, over and above the amount of government and federal farm loan bonds which the banks might have, by approved customers' notes. The county board, by resolution, accepted the offer and authorized the county treasurer to accept such notes as security for the surplus deposits, to be approved by the county treasurer and county clerk, and deposited with the county clerk, and authorized and instructed the treasurer to deposit in said banks deposits to the amount of 80 per cent. of said notes, so furnished as security, and further directed that said banks be required to furnish sufficient security for all deposits necessary to be placed in said banks.

The amended petition further alleged: Prior to January 3, 1935, both banks became financially involved to such extent that the department of banking of this state took charge of them as receiver and liquidating agent. Some of

the funds deposited by treasurer Pearl had not been withdrawn from the banks. January 3, 1935, Pearl's term of office expired, and it was his duty, under the law and the bond given, to pay over to his successor all moneys in his possession as such officer. On January 3, 1935, Pearl delivered to his successor in office the sum of $13,185.96 in cash, but failed and neglected to deliver to his successor the balance of funds in his possession, to wit, $22,751.59, for which amount the plaintiff prayed judgment.

The defendants demurred to the amended petition, and the demurrer was overruled. The defendants filed separate amended answers, which were practically identical in form. The substance of the pertinent allegations thereof follows: Upon the passage of the resolution (above referred to) the county treasurer had no other option except to obey the order of the county board and comply with the resolution, and, in so doing, deposited in the First State Bank, Burwell, county funds in the sum of $20,269.91, and in the Farmers Bank, Burwell, funds in the amount of $22,767.70, and thereupon said banks furnished the security called for by the resolution. The First State Bank deposited with the county clerk and county treasurer United States government bonds in the amount of $1,600, and customers' notes amounting to $28,000. The Farmers Bank deposited with the county clerk and county treasurer United States government bonds in the sum of $3,500 and customers' notes amounting to $27,000. Said customers' notes were checked and approved by the county treasurer and the county clerk and said collateral was shown to and accepted by the county commissioners. The amended answers further alleged, in substance, that defendant bonding company was not notified with reference to the deposit of customers' notes and had no knowledge of the deposits and was never given an opportunity to check, approve or pass upon said notes or their value of acceptability as security for said deposits; that it was the sole right, duty and responsibility of the board of county commissioners to select and approve the depositories for county moneys and to approve the se-

curity offered by depositories for the safe-keeping of the deposits; that it was the duty of the county treasurer to comply with the resolution. The bonding company contends that it was not informed of the action of the board of county commissioners with respect to the securities to be furnished by the depositories designated; that, if it was the intention of the county commissioners to hold defendant bonding company liable for any shortage of the county treasurer, it was the duty of the plaintiff and the county commissioners to advise the defendant bonding company of said purpose and intention and give it the opportunity to retire from such transaction; that it was the duty of the plaintiff and county commissioners, after ordering and directing the county treasurer to take securities for deposit other than the kind of security referred to in the statute, to so advise the defendant bonding company and give it the opportunity either to be released from liability by reason thereof, or to elect to continue on the bond.

It would appear from the pleadings that, in complying with the resolution naming the depositories, the treasurer, together with the county clerk, approved the securities and knew all of the conditions of the resolutions. There is nothing in the pleadings to disclose that the county commissioners approved the customers' notes.

The plaintiff demurred to the amended answers; the demurrer was sustained; motion for a new trial was overruled; defendant bonding company elected to stand upon its amended answer. From the court's ruling on the demurrer, defendants appealed to this court. This brings us to a consideration of the statutes involved and the conditions of the bond which the defendant bonding company furnished as surety.

The bond provided: "Now, the condition of the above obligation is such that if the above bounden Jesse Leland Pearl shall faithfully and impartially perform and discharge the duties of said office according to law, and shall promptly account for and pay over all money, papers, or other property, that may come into his hands in virtue of

his said office, to his successor in office, or to the person or party entitled thereto, then this obligation to be void, otherwise to be and to remain in full force and virtue."

Section 77-2506, Comp. St. 1929, provides in part: "The county treasurer of each and every county in the state of Nebraska shall deposit, and at all times keep on deposit for safe-keeping in the state, national or private banks doing business in the county, and of approved and responsible standing, the amount of moneys in his hands collected and held by him as such county treasurer. * * * Any such bank located in the county may apply for the privilege of keeping such moneys upon the following conditions (the conditions need not be here stated) : * * * It shall be the duty of the county board to act on such application or applications of any and all banks, state, national or private, as may ask for the privilege of becoming the depository of such moneys, as well as to approve the bonds of those selected incident to such relation, and the county treasurer shall not deposit such money or any part thereof in any bank or banks other than such as may have been so selected by the county board for such purposes."

Section 77-2508, Comp. St. 1929, provides in part: "For the security of the funds so deposited under the provisions of this article the county treasurer shall require all such depositories to give bonds for the safe-keeping and payment of such deposits and the accretions thereof, which bond shall run to the people of the county, and be approved by the county board." Said section further provides for the maximum deposit and for the substitution of securities, and securities to be given in lieu of the bond, but does not provide for the giving of securities such as were offered by the banks in the instant case and approved by the treasurer and county clerk; that is, there is no provision for the acceptance of customers' notes as proper security furnished to permit a bank to be designated as a county depository.

It is therefore obvious that in this instance the banks were not legal county depositories, as provided for by law, and the county board, in so designating such banks as de-

positories, exceeded its authority and went beyond the realm of the statute in such case; in other words, its acts were illegal, as were the acts of the treasurer. Other provisions of said section 77-2508 need not be referred to here.

Section 77-2513, Comp. St. 1929, provides: "No treasurer shall be liable on his bond for money on deposit in bank under and by direction of the proper legal authority if the bank has given bond."

The legal status of a county treasurer with reference to county moneys coming into his hands and the liability attached to him with reference thereto are reflected by the following authorities:

In the case of *Bush v. Johnson County,* 48 Neb. 1, 66 N. W. 1023, this court held: "The duty imposed on a county treasurer by law, and assumed by him, of safely keeping, accounting for and turning over the public funds which come into his hands by virtue of his office, is an absolute one; and where his bond is conditioned for the faithful performance of the duties of the office by him, the sureties on the bond are bound and liable in like manner and their responsibility is the same as that of their principal, and it will be no defense for either of the parties, in an action on the bond to recover public funds, predicated on an alleged failure of the treasurer to account for or pay them over, that the funds have been lost or stolen without the fault or negligence of the treasurer." The court further held: "It is the duty of the bondsmen of a county treasurer to see that the duties of that officer are properly discharged." In *Thomssen v. Hall County,* 63 Neb. 777, 89 N. W. 389, the above holding in the *Bush* case was quoted in the opinion, the court adding (p. 785) : "It may therefore be said to be the settled law in this state that a county treasurer is an insurer of the funds that come into his hands by virtue of his office, and that he and his bondsmen are liable for moneys lost by the failure of the banks in which moneys of the county are deposited, *except where deposits are made in conformity with the depository act."* (Italics ours.)

In *Shambaugh v. City Bank of Elm Creek,* 118 Neb. 817,

226 N. W. 460, it was held: "A county treasurer's sole authority for the deposit of public moneys in banks is to be found in sections 6191-6196, Comp. St. 1922, and the directions, limitations and public policy evidenced thereby must be complied with by such officer." Sections 6191 to 6196, Comp. St. 1922, now appearing as sections 77-2506 *et seq.*, Comp. St. 1929, were referred to in the case of *Massachusetts Bonding & Ins. Co. v. Steele,* 125 Neb. 7, 248 N. W. 648, wherein the above holding was quoted and approved.

In the late case of *Village of Hampton v. Gausman,* 136 Neb. 550, 286 N. W. 757, this court said: "The liability of a public officer in this state for funds entrusted to his care by virtue of his office is that of an insurer (citing *Thomssen v. Hall County, supra*). * * * He must account absolutely for all funds lost in an insolvent bank, *where the bank is not a validly designated depository or where the deposit is otherwise unauthorized by law* (citing *Knox County v. Cook,* 126 Neb. 477, 253 N. W. 649)." (Italics ours.)

The defendants cite *Town of Lakeland v. Bekkedal,* 209 Wis. 636, 245 N. W. 682, as authority for their position. A section of the statute under consideration in the above case, permitting the town board to designate the bank, and providing that when the money is so deposited the treasurer and his bondsmen will not be liable by reason of the failure of such bank or banks, constitutes a specific exemption from liability when the depository is designated. Without repeating the statutes applicable in the instant case, the distinction is clear.

In the case of *County of Missoula v. Lochrie,* 83 Mont. 308, 271 Pac. 710, the statute provided for the deposit of public moneys in solvent bank by the treasurer, and further provided that the treasurer shall take such security as the board of county commissioners "may prescribe, approve and deem fully sufficient and necessary to insure the safety and prompt payment of all such deposits on demand," and then specifically exempted the treasurer from liability for loss of public moneys deposited in accordance with the statute. This presents a much different situation from that

involved in the instant case, as is obvious from that part of the statute herein quoted.

The defendants further contend that the general supervision of county affairs and finances, including the power to make orders respecting the property of the county, is committed to the discretion of the county boards of the several counties; that the county board has sole authority to designate in what banks deposits should be made and that the county treasurer must comply with such designation, citing *State v. Owen*, 41 Neb. 651, 59 N. W. 886.

It is not doubted that the county board does designate the depository in which the treasurer shall deposit public funds. The sections of the statute hereinbefore cited so state. In the instant case the county board acted in excess of its authority.

In 46 C. J. 1032, it is said: "While officers are presumed to have acted within their authority, statutes delegating powers to public officers must be strictly construed, and all persons dealing with public officers must inform themselves as to their authority, and acts which are within the apparent, but in excess of the actual, authority of officers will not bind the government which they represent." At page 1033, it is further said: "Powers conferred upon a public officer can be exercised only in the manner, and under the circumstances, prescribed by law, and any attempted exercise thereof in any other manner or under different circumstances is a nullity."

The amended petition of the county is sufficient in form to disclose that the county treasurer failed to turn over to his successor at the end of his term the amount of money involved in this action. Under the authorities as herein announced, the defendants cannot prevail.

The defendants contend that estoppel *in pais* applies; that the defense of equitable estoppel may be asserted, and the conduct of the county commissioners constitutes constructive fraud. The applicability of the foregoing authorities to the circumstances of this case, as disclosed by the pleadings, makes the defendants' contention in this respect untenable.

It is also contended by defendants that this action is prematurely brought, for the reason that the customers' notes, constituting the security for the deposits, have not been liquidated, and the amount determined to be due the county is not certain. These securities, in the first instance, were not the kind of security provided for by statute, to warrant the deposits to be made in any instance, and, further, the pleadings fail to show in whose hands the customers' notes are at the present time. Any action with reference thereto, where said amounts may be used in determining the amount due the county, is separate and distinct from the present action, under the pleadings and law.

The judgment of the trial court, in sustaining plaintiff's demurrer to the amended answers of the defendants, is hereby

AFFIRMED.