## No. 11,996.

BOARD OF ADMINISTRATORS VS. W. R. MCKOWEN AND C. D. SMITH.

In a suit against the sureties on an official bond for a failure to account for public or trust funds, it is part of the plaintiff's duties to allege and prove that the defalcation occurred during the term of office covered by the bond.

When the term of office for which an official bond has been given has expired and no second bond exacted, the responsibilities of the sureties on the first bond can not be extended so as to hold them liable for the acts of a next term, for which other sureties on a new bond would have been responsible.

When a deficit is shown to have occurred during a first term of an official and in the funds with which, during that term he was chargeable, he will not be permitted to apply moneys, subsequently received by him, to closing up past accounts, thus leaving a deficit at the end of another or second term. The fixed liabilities of sureties can not be lifted from themselves and transferred to others simply by reason of the fact that a new term had commenced with new sureties.

A PPEAL from the Thirteenth Judicial District Court for the Parish of East Feliciana. *Brame, J.*

---

*W. F. Kernan* for Plaintiffs, Appellants.

*Isaac D. Wall* for Defendants, Appellees.

Argued and submitted January 10, 1896.
Opinion handed down February 10, 1896.

Chas. A. Decker was elected treasurer of the Board of Trustees of the Insane Asylum, on September 6, 1892, for the period of one year from that date; he was chosen as his own successor on November 6, 1893, and did not execute any new bond. It is alleged that defendants, who had been his sureties on his official bond, verbally consented to remain his sureties on his said bond as treasurer, and for the balance of the time the said Decker acted as treasurer they recognized him as such, and received and disbursed funds for him as such up to the date of his death. That on September 6, 1893, the said treasurer had in his hands as treasurer aforesaid the sum of *forty-five thousand two hundred and ninety-one 36-100 dollars*, funds of said asylum, and that on November 6, 1893, the date he was elected his own successor, he had in his hands as treasurer, seventy-six thousand five hundred and twenty-three 08-100 dollars, funds of said asylum. That of said amounts in his hands on September 6, 1893, he has failed to account for the said sum of twenty-nine hundred and forty-five dollars.

The defendants pleaded the prescription of one and three years, and contingently they further pleaded the general issue and denied their indebtedness in any sum. They urged that the alleged bond was not a bond at all. That the same was a private writing, not executed before a notary or other public officer as required; that it was never properly approved nor accepted as required by law, nor any notice of its acceptance given to defendants; that it was never delivered as required by law. That the same was never recorded in West Feliciana, in which parish Decker lived and owned real estate, as is required to be done for the protection of the State. That the said recording would have operated as a mortgage on Decker's real estate in said parish to the full amount of the pretended bond sued on; that by their failure to take and effect the said mortgage plaintiffs are unable to subrogate defendants to said rights of mortgage, and by their said default defendants are released from their obligations as bondsmen, if any they had incurred.

They pleaded that Decker was granted a *quietus* by the board on March 22, 1894, as shown by their biennial report made to the Governor of the State.    That a *quietus* was granted to Decker about March 6, 1894; that he was granted an extension of time by the board in which to make his settlement without defendants' consent, and therefore they are discharged from any liability.

The prescription of two years was subsequently pleaded.

The case was tried before a jury, which returned a verdict in favor of defendants.    The court rendered judgment in accordance with the verdict in favor of the defendants and against the plaintiffs.    They appealed.

The opinion of the court was delivered by

NICHOLLS, C. J.    Plaintiffs in their brief first direct our attention to defendants' pleadings with the view of defeating the position taken on their behalf and claimed to be supported by two decisions of this court (40 An. 241, State vs. Powell; 45 An. 1207, State vs. Lake), that being sureties on an official bond to secure the faithful performance of duty of an officer holding an office the term of which is fixed at one year, they were not liable for any default of the principal beyond the term under which the bond is given, and that provisions of law authorizing officers to hold over until their successors are appointed and qualified can only extend the liability of the sureties for such reasonable time as with due diligence would enable the successor to be appointed and qualified.

Plaintiffs say " defendants depend on several special pleas coupled with a general denial—among other pleas they allege that the bond sued on is not a bond at all—that the same is a private writing. They do not depend on the ground that the deficit did not occur during his term of office.    It is a rule of law that a special plea waives the general issue and controls it so far as it goes   *   *   *   Accepting their plea that it is not a bond but a private writing, it is nevertheless a legal obligation which they voluntarily signed and which is binding on them.    This obligation is not limited to any particular time—to any period of time or term of office.    The general rule of law is, that in whatever manner one may bind himself he shall be bound.    The defendants having bound themselves in this manner are bound thereby, *volenti non fit injuria.*"    We can not adopt plaintiffs' view of de-

fendants' pleadings or give to them the consequences claimed. Plaintiffs themselves declare upon the bond as an official bond, and seek to hold defendants liable on an alleged breach of its conditions for a certain sum of money.

Defendants pleaded the general issue and denied that they were indebted in any sum to plaintiffs. They alleged that the pretended bond sued on was not a bond; that the same was a private writing not executed before a notary or other public officer, and not binding or operative for various assigned reasons. A denial by the defendants that they were liable on the ground of action set up by the plaintiffs, because in order to be so bound certain features essential in their opinion to fixing liabilities upon them were lacking, viz.: an instrument of a certain specified form is not an admission of liability upon the instrument they did sign, and which they describe simply to sustain their defence. It would be perfectly consistent for defendants to claim that it was the intention of all parties that they should bind themselves as sureties upon an official instrument which would give them the benefit of defences other and wider than those resulting from a conventional agreement, but that the instrument as signed could not be considered as having that character, but was entirely different from that which it was designed it should be, and therefore not binding at all upon them. We see plainly a denial of liability upon the instrument as an official bond, but we see nowhere an admission of liability upon it, either as a private bond or otherwise. It is expressly averred on the contrary that it was no bond at all, and that defendants owed nothing to the plaintiffs. Plaintiffs' position, if true, would be substantially the abandonment of their allegations in order to substitute in lieu thereof defendants' pleadings so as to make them the basis of a judgment against the latter on grounds entirely different from those set up in the petition and to do so by a forced construction of those pleadings. There was no necessity for defendants to allege that the deficit in Decker's account did not accrue during the term of office which the bond covered. It was part of plaintiffs' own case that they should allege and prove that it did occur during that period. The general issue put them on proof of that fact. Plaintiffs allege that on the 6th day of September, 1893, Decker had in his hands the sum of forty-five thousand two hundred and ninety-one 36-100 dollars. * * That of said amount in his hands on the 6th day of September,

1893, as treasurer, he had failed to account for the sum of two thousand nine hundred and forty-five 64-100 dollars as claimed in the original petition. As plaintiffs had averred that Decker was elected on the 6th September, 1892, for the period of one year, they by their allegation fixed the time of the deficit and the funds with reference to which the deficit took place. The general issue placed plaintiffs on proof of this fact.

We think that the decisions in State vs. Powell, 40 An. 241; Rison vs. Young, 7 N. S. 298; Brown vs. Cunning, 19 L. 462, and State vs. Lake, 45 An. 1207, support defendants in their contention as to the extent of the legal liability of a surety upon the bond of an officer holding under a fixed term of office. See also authorities collated in Am. and Eng. Encyclopedia of Law, *verbo* "Bonds," p. 466 M.—(Note). It remains to be seen whether the principle announced in those cases finds reason for application in the case before us.

The Insane Asylum at Jackson, La., was established by Act No. 327, approved March, 1855. Its affairs are administered by a Board of Administrators. The law directs that the board shall elect annually a treasurer, who shall be *ex-officio* secretary, and who shall not be a member of the board, and who shall give bond and security for the faithful performance of his duty, to be approved by the majority of the board (Sec. 1766, Revised Statutes). Deckerw as elected secretary on the 5th of September, 1892. A question was raised as to whether he was elected for a full term or to fill out the unexpired term of a former treasurer (Holcombe), and as to what in law fixes the period of the beginning of a term of office. One side claims that the term commenced on the day of election and continued for one year from that date—the other that it commenced on the 10th day of July, it being asserted that that was the date on which the act establishing the asylum was originally promulgated. There is nothing in the evidence going to show when Holcombe's (the former treasurer) term commenced or how and when he left the office, and nothing to show the day of the promulgation of the act of the Legislature. We do not think a decision on these points one way or the other would materially affect the result of the litigation, for, assuming plaintiff's contention that the defendants would be responsible for the faithful accounting of all funds which should have been in the hands of Decker on September

6, 1893, to be true, we do not find established the fact that he did not have that amount actually in his hands at that time; or that all funds then in his hands were not properly disbursed and accounted for. Plaintiffs charge there was a deficit in the funds then in his hands to the amount of two thousand nine hundred and forty-five dollars. From that date forward Decker received sums largely in excess of the amount he had in his hands on September 6, 1893; and he also disbursed amounts largely in excess of that sum. No illegal disbursements are charged or shown to have been made, either after or before that date. When, after he had continued to act as treasurer from September 6, 1893, to the date of his death, September 10, 1894, and after he had disbursed during that interval a sum largely in excess of the amount in his hands on the 6th of September, 1893, his acocunts were ascertained to be ultimately short to the amount of two thousand nine hundred and forty-five dollars, we know of no reasoning and no process by which we could reach the legal conclusion that the deficit claimed occurred prior to the 6th September, 1893, or out of the funds in his hands on or before that day. On the contrary, if the funds with which he was chargeable on the 6th September, 1893, were then in his hands we should rather, as a matter resting on mere presumption, presume that subsequent disbursements were drawn from the fund in his hands in the order of their receipt. If Decker had placed his funds in bank at different dates, checking against them from time to time, payments made by the bank would, we think, be referred back and set against the earliest indebtedness to him. (Morse on Banking, Sec 355.) If the deficit had been shown to have occurred during the first term, and in the funds for which he was then chargeable, he would not have been permitted to have applied moneys subsequently received by him to closing up past accounts, thus leaving the deficit at the end of the second term. The fixed liability of the sureties could not be lifted from themselves and transferred to others simply by reason of the fact that a new term had commenced with new sureties. Clements vs. Boissat, 26 An. 244. On page 466-K of the American and English Encyclopedia of Law, *Verbo* "Bonds," it is laid down that "Sureties are not liable for the default of their principal before the execution of their bond; but when an officer is reappointed and gives a new bond, the sureties are liable for the amount of money shown by his books to be on hand. He is presumed to have the

amount charged to him, and the burden of proving the contrary is upon the sureties." In support of this proposition are cited Bruce vs. U. S., 58 U. S. (17 How.) 437, 443; S. C. 4 Myers, Fed. Dec., Sec. 522; U. S. vs. Stone, 106 U. S. (16 Otto) 525; U. S. vs. Eckford, 42 U. S. (1 How.) 250.

In Pine County vs. Willard, 39 Minn. 125, where a treasurer, on surrendering his office during his second term, failed to account for or pay over all the funds then chargeable to him, it was held that the sureties for the second term were *prima facie* liable, and that to exonerate themselves the burden was on them to show that this deficiency occurred during the former term. In Morley vs. The Town of Metamora, 78 Ill. 394, where a supervisor was elected his own successor and gave a new bond it was held the sureties were liable on such bond for any amount which appeared to have been in the hands of such supervisor belonging to the town at the end of the preceding official term. At the end of his first term he had made a report showing a certain amount in his hands, belonging to the town, which report was approved; the court was of opinion that the report should be considered as true, and that such amount was in his hands as his own successor, and that the sureties on his bond for the second term were liable for a failure on his part to account for it. The evidence in that case showed that the supervisor had accounted for an amount of money about equal to the amount by him received that year. The defence was that the defalcation all occurred during the first year, and hence the sureties on the first bond were liable for it. Had Decker furnished a new bond at the termination of his first term —and the present suit had been directed against the sureties on such bond, the principles announced in the cases cited would have applied directly against the sureties so sued. Can the fact that there was no second bond exacted, and no second sureties given who could be held responsible for the last term, extend the responsibilities of the sureties on the first bond? We think not. They were under no obligation to see to it that the treasurer should furnish a second bond—that was a duty devolving upon the Board of Administrators of the Asylum themselves. They can not make the responsibility for a failure to have had such bond furnished fall on other parties.

We think the judgment appealed from is correct and it is affirmed.