WILLIAM THOMSSEN ET AL. v. COUNTY OF HALL.

FILED FEBRUARY 6, 1902.  No. 11,162.

Commissioner's opinion, Department No. 1.

1. County Treasurer: SUIT ON BOND: OWN SUCCESSOR. An action brought against a county treasurer and his bondsmen for the recovery of moneys alleged to have been converted by such treasurer, is not prematurely brought if commenced after the termination of the term of office of such treasurer, and after he has given a bond and qualified as his own successor in office.

2. ————: INSURER OF FUNDS. In this state a county treasurer is an insurer of the funds which come into his hands ex officio, and such treasurer and his bondsmen can not, in an action by the county to recover funds not accounted for, plead that such funds

were lost without any fault or neglect on the part of the treas-
urer, by the failure of a bank in which they were deposited for
safe keeping only, and in good faith, believing such bank to be
solvent.

3. ———: INTEREST. In an action by a county against a county
treasurer and his bondsmen to recover funds alleged to have
been converted by the treasurer, it is not error to compute
interest on such funds from the date at which, under the terms
of the statute and the official bond, the funds should have been
accounted for and turned over to the successor in office of such
treasurer.

ERROR from the district court for Hall county. Tried
below before SEDGWICK, J. *Affirmed.*

*William H. Thompson* and *Othman A. Abbott,* for plain-
tiffs in error.

*Ralph R. Horth, Charles G. Ryan* and *William S.
Pearne, contra.*

KIRKPATRICK, C.

This is an action brought by the County of Hall against
William Thomssen and the Fidelity & Deposit Company
of Maryland, a corporation, defendants. Plaintiff in its
petition recited the election of the defendant Thomssen
to the office of county treasurer of Hall county; the execu-
tion, delivery and approval of the bond upon which plain-
tiff in error, the Fidelity & Deposit Company, was surety;
and the fact that Thomssen entered upon the discharge of
his duties as county treasurer, and held the office for the
term of two years, and until the 4th day of January, 1898;
that he had received from his predecessor in office and
from other sources, as county treasurer, the sum of $357,-
317.89, and that he had paid out·and disbursed, together
with what he had on hand and turned over to himself as
his own successor, the sum of $335,332.28, and no more,
leaving as a balance due the county the sum of $21,985.61,
for which amount with interest at the rate of seven per
cent. per annum from January 4th, 1898, the county prayed
judgment. Plaintiffs in error filed separate answers, in

which they admitted the election of Thomssen as county treasurer, the execution and approval of his bond as set out in the petition, and in addition set out two defenses, each of which applies to a portion of, and, taken together, cover, the money alleged to have been converted. First, it is alleged that the Bank of Commerce of Grand Island had, during the term of office of the predecessor of Thomssen, given a bond to the county, and been made a county depository for the sum of $10,000, which had been deposited therein by the predecessor of Thomssen, and which sum was a part of the amount sought to be recovered by the county; that, for reasons pleaded in the answer, said sum had never been turned over to Thomssen, but still remained in the Bank of Commerce, on deposit to the credit of the county. To this portion of the answer a reply was filed by the county, which, in effect, admitted the allegations of the answer, and pleaded that the predecessor of Thomssen had given him a check for the $10,000 so on deposit, and that Thomssen had presented the check at the bank, and had it certified, and allowed the funds to remain on deposit, and that Thomssen and his bondsmen by such act became liable to the county for the same. To this reply plaintiffs in error demurred, which demurrer was by the trial court sustained; the court's ruling thereon not being presented for consideration in this case. As to the remainder of the money alleged in the petition to have been converted by plaintiff in error Thomssen, it was alleged in the answers, in substance, that the Bank of Commerce was a corporation duly incorporated as a bank, and was, at the time of his election and for many years prior thereto had been, engaged in the banking business in the city of Grand Island; that it was then, and for many years past had been, generally known as a financially sound and safe depository for moneys, and was then believed to be safe; that at the time Thomssen entered upon the discharge of his duties as treasurer, the county had provided no safe or secure place for the deposit or keeping of large sums of money, but had provided simply a fire-

proof safe and vault suitable for the purpose of keeping the records and valuable papers of the county, to prevent their loss or destruction by fire, and that the safe or vault was not a secure, safe or suitable place in which to keep moneys of the county; that there were no banks in the county which had given bonds and were lawful depository banks; that plaintiff in error Thomssen, in good faith, and for the sole purpose of securely keeping and preserving the moneys belonging to the county, deposited a part of the moneys which came into his hands as treasurer in the Bank of Commerce to his credit as county treasurer, and not otherwise, and that such deposit was with the full knowledge and consent of the board of supervisors of the county, and that on or about the 20th day of January, 1896, the Bank of Commerce failed, suspended payment, closed its doors, and surrendered all of its assets and property into the hands of the state banking board, and that thereafter a receiver was appointed, who paid as dividends on the money so deposited the sum of $6,415.05, leaving a balance in said bank to the credit of the county treasurer of $9,450.38; that plaintiff in error Thomssen, by reason of the premises, was not liable for this balance; that he had acted in good faith and with due care and diligence; and that the money was lost without any fault or negligence on his part. A jury was called to try the issues, and plaintiff in error tendered evidence in support of the above-set-out portions of their answers, whereupon defendant in error interposed a demurrer *ore tenus*, which was sustained. Plaintiffs in error excepted to this ruling, and, no further evidence being offered or received, the court instructed the jury to return a verdict for the county in the sum of $9,450.38, with interest at seven per cent. thereon from January 4, 1898. Judgment was entered against plaintiffs in error on this verdict, separate motions for new trials were made and overruled, and the case is brought to this court upon separate petitions in error for review.

Plaintiffs in error, in their brief, contend that the judg-

ment of the trial court is erroneous for three reasons:
First, because the action was prematurely brought; second, because the answer hereinbefore quoted constituted
a good defense; and, third, because the court erred in allowing interest at seven per cent. from January 4, 1898,
rather than from August 4, 1898, the date of the commencement of the suit. These assignments of error will be considered in their order.

In support of the first assignment, it is contended that
it was the duty of the county of Hall, under the provisions
of section 1, article 2, chapter 18, Compiled Statutes, 1901,
entitled "Counties and County Officers," and under the
provisions of section 94, article 1, of the same chapter, on
the 4th day of January, 1898,—the date on which the term
of Thomssen as county treasurer expired,—to have required him to account for the funds in his custody and
control, and that, upon his failure so to account, it was the
duty of the county board to remove him from office, and
appoint a successor as county treasurer, and that because
the county board failed to do this, and plaintiff in error
Thomssen succeeded himself by re-election, there was no
officer or person who could make a legal demand to turn
over the county funds in his possession, and that no suit
could be maintained by the county for funds in his hands
during his first term of office until such legal demand had
been made, and compliance therewith refused. The authorities cited by plaintiffs in error do not sustain this
contention. There can be no doubt that under the statute
the term of office of Thomssen expired at the very latest
when he gave his bond, and qualified and entered upon
the discharge of the duties of the office as his own successor. It is equally certain that upon his qualification
for his new term he was another and distinct officer, to the
same extent as though some other person had succeeded
him. The sureties on his bond given for his first term
would not be liable for any act or misfeasance on his part
during his second term, and his second-term bondsmen
would not be liable for money which never in fact came

into his hands from himself as his own predecessor. In the case of *Amherst Bank v. Root*, 2 Met. [Mass.], 536, it is said: "If there be a re-election, it is in fact to another and not the same office; such as the offices of treasurers of the state, counties, towns and the like, where the office is created by law, and by the same law made annual." In *Citizens Loan Ass'n v. Nugent*, 29 Am. Rep., 230, it is said: "A man who is re-elected to an office may be truly said to have changed his official personality. Such a person, with respect to his position, is another officer, and it is in this sense that a man is sometimes said, in these cases, to be his own successor." In *Thurston v. Clark*, 40 Pac. Rep. [Cal.], 435, it is said: "Each term of an office is an entity separate and distinct from all other terms of the same office." If this action had been brought prior to the 4th day of January, 1898, and during the continuance of the first term of office of plaintiff in error Thomssen, then there would be merit in this contention. It was properly the duty of the board of supervisors, under the terms of the statute cited, to have removed plaintiff in error from office, or to have refused to approve the bond tendered by him for his second term; but that there was a failure to perform this duty by the county board can not prejudice the rights of the county in this action. It is very clear that the first contention of plaintiffs in error can not be sustained.

It is next contended that the county treasurer, under the law of this state, is only a bailee for hire of the moneys that come into his hands by virtue of his office; that Thomssen having in good faith deposited the money of the county in the Bank of Commerce, which was at that time believed to be a safe and responsible banking institution, and these deposits being made with the knowledge of the county board, and the county having failed to furnish a safe and suitable place in which to keep the funds, therefore the answer of plaintiffs in error stated a good defense; and that the loss of the money must fall upon the county. This view is very ably presented by counsel for

plaintiffs in error, and many authorities are cited which it is claimed support the doctrine stated. We have carefully examined these authorities, and are constrained to say that many of them were decided under statutes differing materially from our own, and the bonds therein involved differed materially from that involved herein. The weight of authority seems to be that the county treasurer is an insurer of the money coming into his hands by virtue of his office, and that such officer is liable absolutely to account for such funds and if funds are lost by the failure of a bank in which they have been deposited, the treasurer and his bondsmen must bear such loss. *Fairchild v. Hedges,* 44 Pac. Rep. [Wash.], 125; *State v. Nevin,* 19 Nev., 162; *Wilson v. Wichita County,* 67 Tex., 647; *Redwood County v. Tower,* 28 Minn., 45; *Lowry v. Polk County,* 51 Ia., 50; *Nason v. Poor Directors,* 126 Pa. St., 445; *Supervisors of Omro v. Kaime,* 39 Wis., 468; *Rose v. Douglass Township,* 52 Kan., 451. But if the weight of authority were as claimed by counsel, the rule could not obtain in this state. By the terms of section 21, article 3, chapter 18, Compiled Statutes, 1901, it is made a felony for the county treasurer to deposit money of the county in any bank other than such as may be designated under the provisions of the depository law, and under this section it may be said that plaintiff in error Thomssen was violating a plain provision of the statute by making the deposit on account of which the loss occurred. And it seems clear that neither he nor his bondsmen can ask to be released from liability for the loss of money so wrongfully deposited. By section 91, article 1, chapter 18, Compiled Statutes, 1901, it is made the duty of the county treasurer to receive all moneys belonging to the county from whatsoever source derived, and to pay out all moneys received by him for the use of the county, only on warrants issued by the county board according to law, except where special provision for the payment thereof is or may be otherwise made by law. By section 89 of the same chapter it is provided that the county clerk shall keep an account with the

county treasurer, in which account he shall be charged with all moneys received by him, from whatever source derived, together with all taxes due as shown by the tax lists, and in which he is to be credited only with uncollected taxes, and with the money he pays out in accordance with law. We find no provision in this section under which the treasurer may be credited with moneys that may have been lost, even though the loss occurred without any fault or neglect on his part. By section 21, chapter 10, Compiled Statutes, 1901, it is provided that "any officer or person who is entrusted with funds belonging to the state or any county thereof, which may come into his possession by any appropriation or otherwise, shall be responsible for the same upon his bond." From an examination of these sections of the statute, it seems very clear that the purpose of the legislature was to make the county treasurer an insurer,—responsible absolutely for the repayment of all moneys which might come into his hands from any source,—and that from this liability, which, under the law, is absolute, neither he nor his bondsmen can be permitted to escape, even though the loss occurred through no fault or neglect of the treasurer. By section 23, article 3, chapter 18, Compiled Statutes, 1901, it is provided "that no treasurer shall be liable on his bond for money on deposit in bank, under and by direction of the proper legal authority, if said bank has given bonds." From the provisions of this section, specifically exempting the treasurer from liability on his bond for funds deposited in a proper depository, it seems clear that the legislature understood that under the other sections referred to, the treasurer's liablity was absolute, requiring him to account for all other moneys.

An examination of the terms f the bond does not disclose anything that would in any way assist plaintiffs in error to avoid the liability which seems to have b^en fixed by statute. Among the conditions contained in the bond we find the following: "Now if the said William Thomssen shall render a true account of his office and of the doings

therein, to the proper authorities, when required thereby or by law, and shall promptly pay over to the persons or officers entitled thereto all moneys which may come into his hands by virtue of his said office, and shall faithfully account for all the balances of money remaining in his hands at the termination of his office," etc. It will thus be seen that by the terms of his bond as well as by the provisions of the statute, plaintiffs in error are liable to account for all moneys coming into the hands of Thomssen as treasurer. It can not be said that the question is a new one in this state. In the case of *Bush v. Johnson County,* 48 Nebr., 1, this court said: "The duty imposed on a county treasurer by law, and assumed by him, of safely keeping, accounting for and turning over the public funds which come into his hands by virtue of his office, is an absolute one; and where his bond is conditioned for the faithful performance of the duties of the office by him, the sureties on the bond are bound and liable in like manner and their responsibility is the same as that of their principal, and it will be no defense for either of the parties, in an action on the bond to recover public funds, predicated on an alleged failure of the treasurer to account for or pay them over, that the funds have been lost or stolen without the fault or negligence of the treasurer." It is said that the language just quoted is *obiter dictum* and therefore not authority in the determination of the question under consideration. An examination of that opinion, however, shows that the language quoted was used in answer to the contention of Bush and his bondsmen, who pleaded in the action brought against them that the money sought to be recovered was lost in a reputable and presumably solvent bank, that the treasurer had used due diligence in safeguarding the funds, and that they were lost through no fault or neglect on his part. Thus it is seen that the exact question here presented was decided in the *Bush Case,* and adversely to the contention of plaintiffs in error. It may therefore be said to be the settled law in this state that a county treasurer is an insurer of the funds

54

that come into his hands by virtue of his office, and that he and his bondsmen are liable for moneys lost by the failure of the banks in which moneys of the county are deposited, except where deposits are made in conformity with the depository act.

It is also contended that the county treasurer was justified in violating the law by depositing the funds in the Bank of Commerce, because the board of supervisors had failed to provide a suitably safe place to keep the funds, and that they knew that the county treasurer was depositing the funds in this bank. This contention is untenable. The county supervisors, as public officers, are not charged with the keeping of the county funds; and the rule is so elementary as to require no citation of authorities that the public rights can not be prejudiced by the fact that the supervisors knew that the county treasurer was violating the law, and the situation would be the same even though they connived at such violation.

It is next contended that the trial court erred in instructing the jury to return a verdict for interest at the rate of seven per cent. from the 4th day of January, 1898, up to the date of the trial. We are unable to find merit in this contention. Under the law, and by the terms of his bond, Thomssen was required to have on hand and account for this money at the end of his term, which was January 4, 1898. The county had a right to the use of the money at that time with which to meet its obligations, and stop interest on outstanding claims. The money in the hands of the treasurer was due at that time. That was the day on which, by the terms of his bond, he had agreed to account and turn over to his successor this money. Under the provisions of section 4, chapter 44, Compiled Statutes, 1901, it would seem that interest should be computed from January 4, 1898, when the money became due. *Supervisors v. Birdsall,* 4 Wend. [N. Y], 453; *People v. Gasherie,* 9 Johns. [N. Y.], 71; *Board of Justices v. Fennimore,* 1 N. J. Law, 242.

From what has been said, it follows that there is no

error in the proceedings of the trial court, and it is there-
fore recommended that the judgment of the district court
be affirmed.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing
opinion, the judgment of the district court is

AFFIRMED.