CITY OF COZAD, APPELLEE, V. WILLIAM T. THOMPSON
ET AL., APPELLANTS.

FILED FEBRUARY 13, 1934. No. 28773.

*Cook & Cook, Montgomery, Hall & Young* and *Harvey M. Johnsen,* for appellants.

*Halligan, Beatty & Halligan* and *Milton C. Murphy,* contra.

Heard before GOSS, C. J., ROSE and PAINE, JJ., and CHASE and ELDRED, District Judges.

GOSS, C. J.

On a trial to the court judgment was rendered against William T. Thompson, former city treasurer, and American Surety Company of New York, surety on his official bond, for principal and interest found due upon the unpaid balance of city deposits made by the treasurer in Farmers State Bank of Cozad when that bank was in-

solvent, and while Thompson was admittedly a stockholder, director and officer of the bank. Defendants appealed.

Thompson was elected city treasurer for a term of two years commencing May 1, 1928. His official bond for $10,000 was executed by himself and by the surety company on April 9, 1928. It contracted to protect the city for "two years from May 1, 1928, and until his successor is duly elected and qualified" and contained the following: "Now, therefore, if the said W. T. Thompson, Jr., shall render a true and just account of his office and doings therein to the proper authority, when required thereby or by law, and shall promptly pay over to the person or officer entitled thereto all moneys which may come into his hands by virtue of said office, and shall faithfully account for all balances of money remaining in his hands at the termination of his term of office, and shall hereafter exercise all reasonable care and diligence in the preservation and lawful disposal of all books, papers and securities, or other property appertaining and belonging to his said office, and deliver them to his successor or to any person or party authorized by law to receive the same; and if he shall faithfully and impartially, without fear, favor, fraud or oppression, discharge all other duties now or hereafter required of him as such an officer by law, then this obligation to be null and void, otherwise to be and remain in full force and effect."

The petition was bottomed upon the theory that the treasurer knew the bank was insolvent and an unsafe depository for city money but, with gross negligence and without regard to the welfare of the city, deposited its money in the bank and allowed it to remain there for his own benefit and for the purpose of assisting the bank financially.

On May 20, 1929, the bank was taken over by the guaranty fund commission as insolvent. When Thompson took office the bank held deposits of city money amounting to $3,962.37. On May 20, 1929, these deposits amounted to $7,786.54. Pursuant to a reorganization plan agreed

to by more than 85 per cent. of depositors and unsecured creditors, under section 8-181, Comp. St. 1929, the bank was reorganized, with the approval of the banking department, and was reopened on July 3, 1929. The old capital stock was canceled, 500 new shares were issued and paid for at $120 a share, depositors and creditors scaled their credits 50 per cent. and were allowed the slow and doubtful assets, to be liquidated by a trustee. The plaintiff did not join in the reorganization agreement but was paid 50 per cent. of its deposits. This action was brought to recover from Thompson and his surety the balance due the city, which had been charged off when the bank reorganized. The payment by the bank and smaller payments by the trustee so reduced the balance due from Thompson to the city that it amounted to $3,036.78. The court allowed interest at 7 per cent. on this sum from May 1, 1930, and rendered judgment against defendants on September 26, 1932, for $3,585.78.

By stipulation of the parties, jury trial was waived and the cause was tried to the court. When a jury is waived and a law action is tried to the court, findings of fact by the court have the same effect as findings of a jury. They will not be set aside on review unless clearly wrong.

Without reciting the evidence, it is sufficient to support the conclusion that at least from May 1, 1929, to the end of his term a year later, the bank was insolvent, and Thompson, as one of its active officers, knew it. See *Westbrook v. State,* 120 Neb. 625. What he knew as a banker he knew as a treasurer. Yet, as treasurer, he continued to use the bank as a depository of city funds and failed to inform the city authorities of the unsafe condition of the bank. The city claims this was a violation of the condition of his bond and was actionable neglect of his official duty.

The bank had been designated as a depository of city funds but had not given any bond to secure the city deposits. Under the law then existing state banks were,

by statute, exempted from the requirement to give bond imposed upon other banks. Comp. St. 1929, sec. 17-515. This exemption was removed in 1931. Laws 1931, ch. 33, Comp. St. Supp. 1933, sec. 17-515. Appellants argue that the designation of the bank as a depository relieved the treasurer from liability for funds lost in this insolvent bank. They cite section 17-515, Comp. St. 1929, as supporting this proposition. The implication of that section results, ordinarily, in that rule in the case of a treasurer whose depository has been duly selected and who has faithfully exercised his duties to the city; but the matter at issue goes deeper than that, for the city charges a violation of his duty, expressed in the condition of his bond, that he will "faithfully and impartially, without fear, favor, fraud or oppression, discharge all other duties now or hereafter required of him as such an officer by law," in that, knowing the bank was unsafe, he did not inform his principal as to the insolvent condition of the bank but continued to deposit the city funds in the bank. On this point the defendants also cite section 77-2513, Comp. St. 1929. It says: "No treasurer shall be liable on his bond for money on deposit in bank under and by direction of the proper legal authority if the bank has given bond." Here the bank had not given any bond to the city. Hence, the section does not apply.

A city treasurer was also assistant cashier of a bank in which he deposited city funds knowing the bank was insolvent. His surety bond was very similar to the bond involved here. The court held that "there was such bad faith or lack of diligence on the treasurer's part as to render him and surety on his official bond liable for loss on bank failing." *City of Wessington Springs v. Smith,* 54 S. Dak. 515. Closely following that case came another South Dakota decision, to the effect that, when a treasurer knowingly deposits his principal's money in a failing bank, he commits a "breach of duty, for which he was liable on common-law principles and under statute, and for which surety was liable by virtue of contract."

*Independent School District v. Flittie,* 54 S. Dak. 526. A commissioner of finance and revenue of a city who, knowing a bank in which city funds are on deposit was in a poor financial condition, allowed the funds to remain was guilty of "a neglect of duty for which his surety was liable under the bond given it (the city) guaranteeing to save the city harmless from loss caused by his neglect of duty." *City of Topeka v. Independence Indemnity Co.,* 130 Kan. 651.

"The great weight of authority is, in favor· of holding public officers handling public funds to a much stricter accountability than fiduciaries for the loss of private funds. The liability of a collector or receiver of public moneys is in a majority of jurisdictions that of an insurer. He is answerable in all events. The theory on which the doctrine is based is that a public ;officer having public moneys in charge is a debtor bound to account and pay over the exact sums received. His 'liability is not regulated by the law of bailment. The· basis of this rule is public policy." 22 R. C. L. 226, sec. 5.

Appellants argue that section 8-181, Comp. St. 1929, requiring the depositors, not joining in a reorganization agreement signed by 85 per cent. of the unsecured creditors, to be bound thereby is unconstitutional and void under the due process and contract impairment clauses. We do not regard these questions as involved in this action. Thompson deposited the money in the bank and the account ran in his name as city treasurer. It was money collected by him as such officer which he and his surety agreed by the terms of their bond to turn over to the city. When the bank reorganized, the city refused to approve the reorganization plan and did not join the creditors therein. This action is based upon Thompson's direct liability to pay to the city all moneys coming into his hands, and upon the contract of his surety to stand behind him in that duty. So the constitutionality of the section questioned, not being involved, is not decided here.

Appellants assign error because the court refused to allow them to amend their respective answers so as to plead estoppel against the city arising out of the receipt of the two dividends from Peter Jensen, trustee, collected by him out of the part of the assets of the bank not taken over by the reorganized bank. It is argued that this was a ratification of the depositor's contract and estopped the city; and that the city has destroyed the defendants' right of subrogation against the bank and should not be permitted to recover. Considering these amendments as allowed, we do not think they would accomplish the result claimed. The city council never ratified the acts of Thompson and his successor in office in receiving the dividends from the trustee. The council has at all times refused to accept the money and to ratify or approve. In the petition the allegations and prayer were for the full half of the amount in the bank when it closed. The dividend was received by or on behalf of Thompson and not by the city, but he caused it to be turned over to the city. He could not bind the city to the reorganization plan. The court decreed that this money was a credit due Thompson and his surety and rendered judgment for the balance due, thus giving both the credit for the dividends.

No estoppel of a municipality can grow out of dealings with public officers of limited authority. A municipality is not estopped by the unauthorized acts of its officer or agent. 10 R. C. L. 707, sec. 35. Thompson, the treasurer, had the city money in the insolvent bank. The city refused to join in the reorganization of the bank, relying upon the treasurer and his surety to restore the money. Thompson could not bind the city to the plan, a part of which was to join in a trust to collect for depositors whatever was collectible on poor assets taken out of the bank at the time of its reorganization. The city had a right to take from Thompson or on his behalf whatever he secured by his own arrangement with the trustee and other depositors of the bank. The mere fact that the city

had been charged by the trial court with these payments does not work an estoppel against the city in view of its consistent attitude up to that point.

Lastly, the decree is criticized because it allowed interest from May 1, 1930, on the $3,036.78 balance Thompson did not have on hand and which so far has not been paid. That was the date on which his term expired and the date recited in his surety bond as the end of his term. While the bank had been taken over by the department on May 20, 1929, the trial court allowed interest only from the end of the term on the above sum withheld by the treasurer. In this we find no error.

The judgment of the district court is

AFFIRMED.