VILLAGE OF HAMPTON, APPELLEE, V. A. L. GAUSMAN ET AL.,
APPELLANTS.

286 N. W. 757

FILED JULY 3, 1939. NO. 30425.

*Craft, Edgerton & Fraizer,* for appellants.

*Ira D. Beynon, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

JOHNSEN, J.

This is an action upon the official bond of a village treasurer, for funds on deposit in a closed bank of which he had been the managing officer. On a trial without a jury, the court entered judgment against the treasurer and his surety for $2,500, the amount of the bond, together with interest at 6 per cent. from May 5, 1932. The surety, Hartford Accident and Indemnity Company, has appealed.

In the præcipe filed by the surety in this court, Gausman, the principal, also is designated as an appellant, but this designation is improper in view of the fact that he filed no motion for a new trial in the district court and furnished no appeal undertaking. He can therefore only be treated as an appellee, and, as against him individually, no question can be considered with respect to the correctness of the judgment. We will not, however, dismiss the surety's appeal, as plaintiff urges us to do, for this error in designation, but will disregard the error and recognize Gausman's correct status.

The surety contends that the trial court erred in rendering judgment against it on the bond, for the following reasons: (1) The bond was not signed by the principal. (2) It expressly provided that the surety should not be liable for any loss of funds occasioned by a bank failure. (3) The depository bank did not fail until after expiration of the bond, after approval of the treasurer's accounts, and after Gausman's reelection for a new term. (4) The evidence did not establish that the bank was insolvent during the term of the bond.

Under the pleadings, the first contention of the surety might perhaps be ignored, but we shall dispose of it on its merits. The bond of a public officer, joint and several in form, as all official bonds are required to be (Comp. St. 1929, sec. 12-102 *et seq.*), is not rendered void in favor of the surety because of the failure of the principal to sign it, especially in view of section 12-113, Comp. St. 1929, pro-

viding that no official bond shall be rendered void by reason of any informality or irregularity in its execution. *Pima County v. Snyder*, 5 Ariz. 45, 44 Pac. 297; 22 R. C. L. 499, sec. 180; 110 A. L. R. 959, annotation.

The surety's second contention is based on the following provision in the bond: "The 'Surety' shall not be liable hereunder for the loss of any public moneys or funds occurring through or resulting from the failure of, or default in payment by, any banks or depositories in which any public moneys or funds have been deposited, or may be deposited by, or placed to the credit, or under the control, of the 'Principal.'" Under section 12-112, Comp. St. 1929, Gausman's bond was obligatory upon him and his surety for the faithful discharge of all legal duties resting on him as village treasurer. The statute, by construction, constituted part of the bond, and the scope of the statutory obligation could not validly be limited by any provision in the instrument. *Curnyn v. Kinney*, 119 Neb. 478, 229 N. W. 894; *United States Fidelity & Guaranty Co. v. McLaughlin*, 76 Neb. 307, 107 N. W. 577; *Holt County v. Scott*, 53 Neb. 176, 73 N. W. 681. Whatever the measure of Gausman's duty was to account for the funds of the village under the law, it could not be restricted, nor could the surety's liability, by the bond provision on which the surety seeks to rely.

The liability of a public officer in this state for funds entrusted to his care by virtue of his office is that of an insurer, except as it has been modified by statute. *Ward v. School District No. 15*, 10 Neb. 293, 4 N. W. 1001; *Thomssen v. Hall County*, 63 Neb. 777, 89 N. W. 389. He must account absolutely for all funds lost in an insolvent bank, where the bank is not a validly designated depository or where the deposit is otherwise unauthorized by law. *Knox County v. Cook*, 126 Neb. 477, 253 N. W. 649. And even where the funds have been regularly placed in a designated depository, this is not a complete defense to the officer, unless the statute expressly relieves him of all responsibility for the deposit. His status in such a situation is that of a bailee; he must still exercise reasonable prudence and

good faith in protecting the funds and is liable on his official bond for any loss resulting from his failure to do so. *United States v. Howard,* 302 U. S. 445, 82 L. Ed. 352, 58 S. Ct. 309. Where he acquires knowledge of facts showing the bank to be unsafe, he may be responsible if he fails to communicate the information to the authority charged with designating the depository, or to have the funds removed. *City of Cozad v. Thompson,* 126 Neb. 79, 252 N. W. 606. If he is the managing officer of the bank, he is chargeable with knowledge of the bank's insolvency, and, if he fails in this situation to protect the funds, in order to avoid injuring the bank, he is guilty of a breach of duty amounting to fraud. *Independent School District v. Flittie,* 54 S. Dak. 526, 223 N. W. 728. For a breach of any of the foregoing duties, or of any other duty, resulting in a loss, his surety is liable, in spite of any attempted limitation in the provisions of the official bond.

Gausman was elected village treasurer on May 5, 1931. Under section 17-514, Comp. St. 1929, he became the custodian of all funds belonging to the village. Under section 17-515, then also in force, he was required to deposit the funds for safe-keeping "in the state or national bank doing business in the city or village, and of approved and responsible standing." The village board was empowered to designate a depository, and it was provided that "the city or village treasurer shall not deposit such moneys or any part thereof in any bank or banks other than such as may have been so selected by the city council or board of trustees for such purposes, if any bank or banks have been so selected." There was no provision in the statute expressly relieving the treasurer of all responsibility as custodian for deposits so made. In this situation, as the authorities cited indicate, while the designation of a depository would remove the treasurer's liability as insurer, his obligation as bailee still remained.

In this case, on Gausman's election as treasurer, the village board, on his application, designated the Farmers State Bank of Hampton, of which he was managing officer,

vice-president, director and stockholder, as official depository in place of its competitor. The bank gave the village a depository bond, signed by some of its directors as sureties, and it is argued that this fact should be considered in connection with the provision of the treasurer's bond purporting to exonerate the surety on losses occasioned by a bank failure. The requirement that state banks designated as depositories of village funds furnish a depository bond was first made by the legislature in 1931. Laws 1931, ch. 33. Up to that time, state banks, presumably because of the guaranty fund provisions of the statute, had been exempt from giving depository bonds, although national banks had not. Chapter 33, Laws 1931, had been enacted and approved at the time Gausman was elected village treasurer, but it contained no emergency clause and therefore did not go into effect until several months later. The bank, however, furnished a depository bond in compliance with its provisions. This statutory requirement was not intended to lessen the duties or obligations of a village treasurer, but merely to provide additional security and protection for village funds. In a parallel situation, where it was desired to lessen the liability of a treasurer of public funds, because of the furnishing of a depository bond, express language to this effect was used in the statute. Section 77-2513, Comp. St. 1929 (Laws 1891, ch. 50, sec. 11), provides that "No treasurer (of state or county funds) shall be liable on his bond for money on deposit in a bank under and by direction of the proper legal authority if the bank has given bond." This statute, by its title, is limited to state and county funds and, of course, has no application to a city or village treasurer, although this fact appears to have been overlooked in the opinion in *City of Cozad v. Thompson,* 126 Neb. 79, 252 N. W. 606.

Legislative intent not to release a treasurer of public funds from all liability by the mere designation of a depository and the giving of a depository bond, but to require an express declaration in the statute to that effect in order to accomplish it, is further evidenced by the enactment of

chapter 31, Laws 1937. This statute was intended apparently to give treasurers of cities of the second class and villages the same exemption from liability as was accorded state and county treasurers under section 77-2513, Comp. St. 1929. It provided that such treasurers shall not be liable for any loss of moneys sustained by reason of the failure of any depository duly designated and approved. It is confirmatory of the fact that, without such an express exemption in the statute, it cannot be held to exist. The statute referred to was enacted subsequent to the accrual of the rights sought to be enforced in this case and so has no application here. Whether it would in any event shield a treasurer, if he failed to exercise good faith, is not now before us.

In the situation presented, the provision in Gausman's bond that the surety shall not be liable for any loss occasioned by a bank failure is not available as a defense, because it is contrary to Gausman's obligation, as the statutes then existed.

The surety's third and fourth contentions involve primarily the question of when the loss must be deemed to have occurred and the sufficiency of the evidence to establish such fact. They will accordingly be considered together.

Gausman, as has been indicated, was elected village treasurer for one year, commencing May 5, 1931, and gave bond for the term from May 5, 1931, to May 5, 1932. At the expiration of his term, he was reelected for another year, but he did not furnish a new bond. An auditing committee, appointed by the village board, reported on July 5, 1932, that his accounts were correct. The chairman of the board on August 2, 1932, furnished the surety with a certificate reciting that the treasurer's books and accounts had been examined and "found to be correct in every respect, with all funds properly accounted for." On August 15, 1932, the bank closed its doors. The village had over $7,500 on deposit on May 5, 1932, and substantially the same amount at the time the bank closed, although in the meantime some deposits and withdrawals had been made.

The surety argues in this situation that there was no loss during the term of the bond. The position of the village, on the other hand, is that it would have been impossible for Gausman to have accounted for the funds at the expiration of the bond term, on May 5, 1932, and that the loss therefore had actually occurred before that date. If the condition of the bank was such on May 5, 1932, that it could not or would not then have permitted Gausman to have withdrawn the funds of the village for the purpose of turning them over to a successor, and this situation continued to exist until the closing of the bank, then there certainly was a loss during the term of the bond as to such funds as the village never thereafter received. In these circumstances, Gausman, as village treasurer, should have acted upon the knowledge which he, as managing officer of the bank, had of its financial condition, in time to have prevented the loss. His failure, under these circumstances, seasonably to have communicated the facts to the village board for their appropriate action or to have taken other steps to have the funds withdrawn in proper time would constitute a breach of duty and might create a liabilty on his official bond.

The surety insists that the bank's condition on May 5, 1932, is immaterial and can give rise to no liability on the bond, because Gausman made such an accounting to himself as his own successor and to the village board as to exonerate his bond. The certificate from the chairman of the village board to the surety is said to be conclusive evidence that Gausman made a proper accounting. The mere checking of the treasurer's receipts and disbursements by the village board and the approval of his records would not exonerate his bond. Nor would the fact that the chairman of the board certified to the surety that the treasurer had duly accounted for all funds estop the village to show that no accounting had in fact been made. Gausman certainly could not legally account to himself, if he had nothing to account with. The transfer from his one hand to the other of a checkbook to a worthless bank account would not constitute a legal accounting. *Bush v. Johnson County*, 48 Neb. 1, 66 N. W. 1023.

The question then is whether the evidence sufficiently established that the deposit was worthless on May 5, 1932, because the bank would not or could not have permitted its withdrawal. The evidence is not as detailed as it might have been, but it is a reasonable and natural inference from the record that the village funds were needed to keep the bank open and that any attempt to withdraw them in their entirety would have precipitated its closing. In the light of the examination reports contained in the record, and the fact that the bank closed its doors three months later, the fact is that it was potentially and causatively closed on May 5, 1932. Some deposits and withdrawals were permitted to be made subsequent to May 5, 1932, but, as has already been indicated, the total amount of village funds in the bank remained substantially unchanged. But, in any event, if the amount of the loss was thereby slightly reduced or recouped, it was certainly not obliterated. The funds which the village never received were continuously lost to it since May 5, 1932.

We need not discuss all the evidence bearing on the bank's financial condition. The bank had been operating at a loss. Its cash reserve had been consistently, over a long period of time, lower than the statutory requirement. It was frozen with real estate and slow loans, as were many other state banks in that period. It had approximtely $80,000 in deposits. Of its assets, $7,500 represented banking house and fixtures and $24,000 represented other real estate. Its real estate greatly exceeded the amount contemplated by statute, and it had been carried more than five years under special permission of the banking department. The last extension granted by the department, referred to in the record, was to January, 1932. The history of the property gave no hope of immediate disposition, and the banking department estimated a substantial ultimate loss thereon. In an examination report of November 4, 1931, loans aggregating $14,000 were required to be eliminated. There were other doubtful assets. An additional $19,000, from its past history, was classified as slow, with the prospect of a long

period of liquidation. A report to the banking department on April 16, 1932, showed that the bank had $2,670 cash in its vault and $8,130 on deposit in correspondent banks. Its total available cash resources therefore approximated $10,800. Of this amount, $8,000 represented borrowed cash from the First National Bank of Lincoln, secured by pledged assets, with a maturity date of June 18, 1932. Comparative reports indicated no hope of improvement in the bank's condition, but an inevitable trend toward complete congelation. Its cash assets would not have permitted it to meet its bills payable and pay off plaintiff's deposit. An attempted withdrawal of plaintiff's deposit obviously would have so shattered its reserve as to have precipitated immediate closing of the bank. It is hardly reasonable to believe that the bank would have given plaintiff an unfair preference over its other depositors just before it would be obliged to lock its doors. The conclusion seems to us, therefore, inescapable that Gausman could not, on May 5, 1932, actually have accounted to the village or to his successor for the amount of the funds in the bank.

But, if this conclusion should appear in any way speculative, it is unnecessary to rest Gausman's liability here. A reasonably prudent depositor, familiar with the condition of the bank's assets on May 5, 1932, would certainly have withdrawn his money on that date, had it been possible for him to do so. And so, if the funds of the village could in fact have been withdrawn at the expiration of Gausman's term, his failure to take any steps to have this done constituted a breach of duty which was responsible for the village's loss. If the village board had been given the facts about the bank's condition, which Gausman knew, or copies of the examination reports and comments of the banking department, before the expiration of Gausman's term, it would hardly be contended that they would have permitted the funds to remain in the bank after May 5, 1932. Gausman could not have made a proper accounting, so far as the village was concerned, without communicating to the village board the knowledge which he had of the precarious situa-

tion of the funds. If he had attempted, in silence, to pass the deposit on to a successor, the latter, taking over the deposit without knowledge of the facts, would certainly be entitled to claim, on the closing of the bank three months later, that a proper accounting had never been made. And even if the relationship between the treasurer and his successor might be such as to preclude the latter from making the claim, the village clearly would be entitled to do so and to establish a liability on the original treasurer's bond. *Bush v. Johnson County, supra.* The surety in this case, therefore, cannot escape liability to the village merely because Gausman's receipts and disbursements had been checked and he had purported to enter on a second term as treasurer.

Contention is made that the trial court erred in the amount of the judgment. The testimony as to the salvage received by the village from the receiver of the closed bank and the sureties on the depository bond and the application made of it was not gone into by either party as fully as it might have been. Both parties seem to have been more strenuously concerned about the legal principles involved in the action. There is sufficient, however, in the testimony of Gerald Fenster, the village treasurer, to sustain the trial court's finding on the amount of defendant's liability. It was also proper to allow interest on the amount of the recovery from May 5, 1932, the date of the expiration of Gausman's term, when the loss to the village must be regarded as having occurred. Other minor contentions made by the surety do not call for further discussion. The conclusion of the trial court on the legal principles and facts involved was correct and the judgment should be affirmed.

Plaintiff has been allowed $400 attorney's fees in the district court. An aditional $200 will be taxed as costs here.

AFFIRMED.

PAINE, J., dissenting.

I have been unable to reach the same conclusion that is set out in the opinion adopted by the majority of the members of this court, and therefore file this dissent.

This was a rather unusual case in several particulars, and after the first argument to our court, made November 9, 1938, no opinion was agreed upon, and a reargument was ordered February 20, 1939.

As I understand it from an examination of the record before us, the facts may be briefly stated as follows: This is an action brought by the village of Hampton upon the official bond of the village treasurer for loss of village funds deposited in a bank. Judgment was entered by the district court for $2,500, with interest at 6 per cent. from May 5, 1932, against A. L. Gausman, village treasurer, and the Hartford Accident and Indemnity Company, surety upon his bond.

The bond sued upon appears in the bill of exceptions as exhibit No. 27, and was not signed by the principal, A. L. Gausman, village treasurer, but only by the Hartford Accident and Indemnity Company, being executed by William H. Wallace, its attorney-in-fact, of Chicago, Illinois. This bond was given to cover the specific term beginning May 5, 1931, and ending May 5, 1932, and was approved and accepted by the village board at its meeting held July 6, 1931. In the third paragraph it provided that the surety should not be liable for any loss of public money by reason of the failure of any bank.

The bank's ledger sheets, exhibits Nos. 1, 2, 3, 4, and 5, show the deposit made to the village treasurer's account on May 5, 1931, was $5,926.61, and that the balance in said account fluctuated between $5,000 and $8,000 during the year. On July 6, 1931, the plaintiff village duly designated the Farmers State Bank of Hampton as a depository for its funds, and said bank as principal, with six individuals as sureties, executed and gave to the said village a depository bond in the sum of $7,500. This depository bond requirement, being section 17-515, Comp. St. 1929, did not at that time require a state bank to give such a bond, but it was amended, without an emergency clause, by the legislature on April 18, 1931 (Laws 1931, ch. 33), by omitting four words, "other than state banks," thus thereafter requiring

state banks to give a depository bond. As the legislature adjourned May 2, 1931, the amendment did not take effect until August 2, 1931, but the village board complied with a law which had been duly passed, but had not yet become effective.

The record indicates that the bank failed August 15, 1932, with village funds deposited therein of $8,284.55, and the village began an action on the depository bond, and secured a judgment of $9,055. On said judgment the village was paid by the receiver of the bank $3,000, and collected an additional amount on said judgment from two sureties, this being shown in the minutes of the village board meeting of January 29, 1936, on page 41 of the bill of exceptions, and a portion thereof reading as follows: "It was moved by Feelhaver and seconded by Nickels that the clerk be instructed to make the records of this meeting show the receipt of a $2,000 certified check issued to Attorney I. D. Beynon, as trustee and attorney for the Village of Hampton, as payment or settlement in full of Abe Troester and Mike Troester's liability suit also Whereupon, Attorney I. D. Beynon, issued a personal check to the Village of Hampton, for the sum $1,600 after deducting $400 as his attorney fees as per contract in lieu of the aforesaid $2,000 check dated Jan. 29th, 1936." This makes a total amount collected on depository bond, as shown by the record, of $5,000.

A. L. Gausman was elected treasurer by the village board for one year on May 5, 1931, by a vote of three for and two against him. On July 6, 1931, the fidelity bond in suit of $2,500 and the depository bond of $7,500 furnished by the bank were each accepted and approved.

On April 29, 1932, at the close of his term of office, the village treasurer's annual report was received and set out in the minutes of the board meeting in some detail, showing amounts in the various funds, and a balance on hand May 1, 1932, of $6,089.16. At the board meeting July 5, 1932, the auditor's report was read and accepted. They thereby found the treasurer's full and final report at the end of his term of office correct.

Defendant's exhibit A is addressed to the Hartford Accident and Indemnity Company, and reads:

"This is to certify that on the 28th day of June 1932 the books and accounts of A. L. Gausman, Village Treasurer of Hampton, Nebraska in the position of Village Treasurer were examined up to the close of business on the 5th day of May 1932, and were found to be correct in every respect, with all funds properly accounted for.

"Dated at Hampton, Nebraska this 2d day of August 1932

(Village Seal)    Chas. H. Feelhaver
         Chairman, Village Board
         of Trustees, Hampton,
         Nebraska."

This certificate was made after the hired auditors had found the books of the treasurer to be correct and such auditors' report had been approved by the village board.

The minutes of the village board show, under date of April 29, 1932, that A. L. Gausman was elected as village treasurer for the coming year, but no new official bond is shown to have been given for his second term.

In the case of *Thurston County v. Chmelka*, 135 Neb. 342, 281 N. W. 628, in an action against a school district treasurer and his surety, this court held that, when such a "treasurer succeeds himself in that office, he changes his official personality, for each term of office is a separate and distinct entity."

"A surety is not to be held beyond the precise terms of his contract. His liability is *strictissimi juris,* and cannot be extended by construction. Where the term of the officer is for a definite or fixed period, the surety is only liable for his faithful performance of his duties during that period. This is clearly so where the bond itself specifies the period." *People v. Toomey,* 122 Ill. 308, 13 N. E. 521.

In *Morley v. Town of Metamora,* 78 Ill. 394, 20 Am. Rep. 266, where a supervisor was elected his own successor and gave a new bond, and at the end of his first term made a report, showing a certain amount in his hands belonging

to the town, which report was approved, the court was of the opinion that the report should be considered as true.

In another case it was asked: "Can the fact that there was no second bond exacted, and no second sureties given who could be held responsible for the last term, extend the responsibilities of the sureties on the first bond?" That opinion said: "We think not. They were under no obligation to see to it that the treasurer should furnish a second bond—that was a duty devolving upon the board of administrators of the asylum themselves. They cannot make the responsibility for a failure to have had such bond furnished fall on other parties." *Board of Administrators v. McKowen,* 48 La. Ann. 251, 55 Am. St. Rep. 275. See, also, *County of Wapello v. Bigham,* 10 Ia. 39, 74 Am. Dec. 370.

In *Ida County Savings Bank v. Seidensticker,* 128 Ia. 54, 102 N. W. 821, a bank was organized in 1893, and one surety signed the bond of the cashier, who had been elected for one year. Each year the board of directors reelected him cashier, and he continued until March, 1897, when he absconded, owing $7,959.41. The plaintiff brought action upon the bond, and won a directed verdict in the lower court. This was reversed on the ground that the reelection of the cashier each year was more than a meaningless expression of the pleasure of the directors. It was a filling of a vacancy occasioned by the limitation of their previous appointment.

It is a general rule that, in the absence of special circumstances or provisions, the sureties on the bond of a public officer are not liable for his acts or defaults occurring after the termination of the office, and in 81 A. L. R. 14, many authorities are cited from the United States supreme court and many states in support thereof, and in the same annotation it is stated generally that, when an officer is reelected as his own successor, the sureties upon his bond for the first term are' not liable for his defaults occurring during the second term. It has even been held, as to money which comes into the hands of an officer on the day immediately following the expiration of his term, that the sureties are not accountable.

Was the bank insolvent during all of the year covered by the fidelity bond sued upon in the case at bar? Exhibit No. 29 is a sworn report of the condition of said bank as of April 16, 1932, which was made to the banking department under date of April 21, 1932, and it showed that $8,133.07 was the total cash balance held in other banks subject to check, and $2,671.60 cash on hand, making a total on hand and subject to check of $10,804.67. The cash reserve as of that date was 13.3 per cent., but the average cash reserve for the last 30 days was 14 per cent. of deposits.

It is claimed that the village treasurer could not have made settlement with himself as his successor in the office of treasurer. However, the board did not demand that he produce in cash the balance shown when he turned in his annual report and the auditor approved his report and books. This bank was on that date a going concern, and paid all checks drawn against it until it was closed on August 15, 1932.

If this sworn report of the officers of the bank, made as of date April 16, 1932, had been that of an insolvent bank, as charged by the village, it was the duty of the state banking department to close it up immediately, which was not done, and it was allowed to continue to do business. Evidence indicates that the bank had in its pouch criticized assets as well as frozen assets, and its cash reserve was slightly under the required 15 per cent., but if this condition made a bank insolvent in the spring of 1932, how many Nebraska state banks would have been solvent?

In my opinion this court does not have before it sufficient competent proof upon which to declare that this bank was insolvent, when the state banking department examined it repeatedly, and permitted it to remain open and do business for some months after this fidelity bond had expired.

After such fidelity bond of the treasurer sued upon in this case had expired by its terms, and his accounts had been duly audited and accepted, and the chairman of the board has certified such fact to the bonding company in writing, then some months later a loss does occur by the closing of

the bank by the banking department, whereupon the village at once brings suit upon its depository bond for its loss, for it had recognized such bank as its legal depository for three months after the fidelity bond had expired.

In *State v. Fidelity State Bank*, 127 Neb. 529, 255 N. W. 781, it was held that it was not illegal to deposit funds in a bank in which a city officer was a bank officer.

In this connection, section 77-2513, Comp. St. 1929, reads as follows: "No treasurer shall be liable on his bond for money on deposit in bank under and by direction of the proper legal authority if the bank has given bond."

The balance on hand belonging to the village at the termination of the first year's term of the village treasurer, and covered by the surety bond in the case at bar, was approximately $6,089.16. What is there in the record to show that treasurer Gausman could not, if it had been required of him by the village board (which it was not), have turned over to the board, with his final report at its meeting that night, checks and drafts for the balance shown to be due the village? If such requirement was not made, how can it be argued that he could not have complied with such a demand? If such a demand had been made that night and complied with, would not the surety on his bond for the first year have been released?

In my opinion, the principles of law involved in the case at bar could well be stated in three paragraphs, as follows:

1. Where the term of an officer is for a definite period set out in a bond, a surety thereon is only liable for the faithful performance of his duties during that period.

2. The fact that an officer was reelected for a second term, but failed to give a bond for such additional term, does not extend the responsibility of the surety furnishing the bond for the first term.

3. A surety on the bond of a public officer is not liable for his acts or defaults occurring after the termination of said bond.