CITY OF BESSEMER *v.* RE.

1. MUNICIPAL CORPORATIONS—COMMON COUNCIL—FOURTH CLASS CITY —DEPOSITORY BONDS.

Provision of statute that depositary, designated by council of fourth class city, "shall furnish a bond, as the council may require and approve" *held*, directory and not mandatory that the council require a bond (1 Comp. Laws 1929, § 1873).

2. SAME—FOURTH CLASS CITIES—DUE CARE OF TREASURER IN MAKING DEPOSITS.

A treasurer of a fourth class city is duty bound to use due care in making deposits in a depository even though a question exists as to whether it was a properly designated depository for any amounts in excess of collateral given, as he owes a duty not to make deposits in a bank which he knew was unsound and had not furnished adequate collateral (1 Comp. Laws 1929, § 1873).

3. SAME—CARE REQUIRED OF CUSTODIAN OF PUBLIC FUNDS.

The custodian of public funds is required to use at least the same care in their protection as he would with his own.

4. SAME—HANDLING CITY FUNDS—REPORT TO COMMON COUNCIL.

Treasurer of fourth class city who withdrew city moneys from a bank that was sound and placed them in another one he knew was unsound *held*, not released from liability for such action because he informed the council of the deposits and his reports were accepted (1 Comp. Laws 1929, § 1873).

5. SAME—DEPUTY'S NEGLIGENCE IN HANDLING CITY FUNDS—LIABILITY OF TREASURER AND SURETY.

Treasurer of a fourth class city and his surety *held*, liable for loss sustained through negligence of his deputy in transferring funds from sound bank to an unsound one in excess of latter's collateral where common council had designated both banks as depositaries of city funds with direction to keep amount in each bank equal but not greater than collateral furnished (1 Comp. Laws 1929, § 1873).

6. SAME—DEPOSITARIES—DESIGNATION—RESOLUTIONS—STATUTES.

Treasurer of fourth class city and his surety are not relieved from liability for loss incurred through negligence of his deputy in depositing city funds in a bank which had been designated a depositary therefor by common council by statute relieving treasurers and sureties in case depositary designated in accordance with provisions of that act should fail, where it was enacted subsequent to resolution designating depositaries involved (Act No. 40, Pub. Acts 1932 [1st Ex. Sess.]).

7. SAME—STATUTES—FAILURE OF DULY DESIGNATED DEPOSITORIES— BREACH OF TREASURER'S DUTY TO USE DUE CARE.

Statute relieving custodians of public funds from liability to account for funds deposited in duly designated depositories which failed *held*, inapplicable to case involving breach of duty of fourth class city treasurer to use due care in making deposits even if statute were retroactive (Act No. 95, Pub. Acts 1935).

8. APPEAL AND ERROR—ACTION AGAINST CITY TREASURER—DEPOSITARIES—SALE OF COLLATERAL—SUBROGATION.

On appeal in action of assumpsit against treasurer of fourth class city and his surety for loss sustained through negligence in making deposits in depository which had furnished insufficient collateral, amount returned to city from sales of collateral already made, is ordered deducted from amount due from depositary and while no disposition is made of balance of collateral still on deposit, upon payment of judgment for city, party or parties so paying are subrogated to rights of city as to such collateral.

Appeal from Gogebic; Driscoll (George O.), J. Submitted June 22, 1937. (Docket No. 24, Calendar No. 39,363.) Decided November 10, 1937.

Assumpsit by City of Bessemer, a municipal corporation, against Leo Re and Standard Accident Insurance Company, a Michigan corporation, for amount of plaintiff's money negligently deposited in Peoples State Bank. Judgment for plaintiff. Defendants appeal. Remanded with instructions to enter judgment for plaintiff in a different amount.

*Wm. F. Pellow, Charles M. Humphrey* and *Ivan D. Wright,* for plaintiff.

*William S. Baird* (*Lines, Spooner & Quarles* and *Howard A. Hartman,* of counsel), for defendants.

BUTZEL, J. On April 6, 1931, defendant Leo Re was elected treasurer of Bessemer, a fourth class city, plaintiff herein. He filed a treasurer's bond for $20,000 with the defendant Standard Accident Insurance Company, as surety, and appointed as his deputy Frank J. Duda, who looked after all of the duties of the office. 1 Comp. Laws 1929, § 1873, in defining the powers and duties of the treasurer of a fourth class city, provides that the aldermen may designate one or more depositories in such cities in which the city treasurer shall deposit all moneys, which may be drawn therefrom only in such manner as the common council shall direct. "Every such depositary shall furnish a bond, as the council may require and approve." Depositaries may be changed by the council at any time. The treasurer shall receive all moneys belonging to the corporation, keep an account of all receipts and expenditures and shall not be liable for any neglect or default of such depositary or depositaries. The provision in regard to giving a bond such as the council may require and approve is directory and it is not mandatory that the council "may" require a bond.

The common council of Bessemer designated the Peoples State Bank and the First National Bank of Bessemer as depositaries by a resolution which also provided that each bank file a depository bond in the sum of $15,000. This they never did. No further action was taken by the common council for the time being. Peoples State Bank was unable to furnish a bond as it could not make a satisfactory

financial statement to the bonding company. Evidently taking advantage of Act No. 22, Pub. Acts 1931, the First National Bank of Bessemer deposited bonds of various municipalities in trust for the city of Bessemer, and the securities were accepted by formal action of the council. Peoples State Bank, on October 14, 1931, made an attempt to deposit securities, but only deposited $7,000 par value of United States Rubber Company's bonds and $3,000 par value of Insull Utility bonds under a depository agreement with the Detroit Trust Company. The agreement was defective and the securities were never approved by proper action of the council though the bonds were accepted, and later the agreement was signed by the Detroit Trust Company as trustee for the benefit of the city. The deposit did not conform with the provisions of Act No. 22, Pub. Acts 1931. Subsequently Peoples State Bank executed a supplement to the depository agreement of October 14, 1931, and deposited with the Detroit Trust Company, trustee, bonds of par value of $20,000 as additional security. This supplemental agreement is dated May 2, 1932, although the deposit appears to have been made previous to that date. Among the bonds deposited as additional security were a number of real estate and mortgage bonds, some industrial bonds and one of the Gogebic Country Club. On May 2, 1932, when Re went out of office, the total market value of all bonds deposited was $6,762.

Duda, who as deputy attended to the duties of the treasurer, doubted the solvency of the Peoples State Bank and until April 1, 1932, kept the amounts deposited in that bank at a minimum. Except on very few occasions when it was necessary to issue large warrants, the balance on deposit was seldom over

$12,000. However, on April 1, 1932, the treasurer withdrew $30,000 from the other depositary, Bessemer National Bank, and deposited it in the Peoples State Bank, thus increasing the total amount on deposit therein to $42,210.96. He did this most reluctantly and only after being threatened with mandamus proceedings by the cashier of the Peoples State Bank. The amount on deposit in the Peoples State Bank was reported to the city council the end of each month, the reports being accepted and placed on file. No report is shown in the record for December 31, 1931. Re, as treasurer, had on deposit in the Peoples State Bank on September 30, 1931, $3,859.84; on October 31, 1931, $307.79; on November 30, 1931, $283.30; on January 31, 1932, $1,678.37; on February 29, 1932, $27,147.80; on March 31, 1932, $12,486.16; on April 30, 1932, $36,465.21. No resolution approving of these deposits was ever passed.

On April 7, 1932, a report was accepted by the common council as filed by the treasurer showing that the amount on deposit in the Peoples State Bank as of March 31, 1932, was $12,486.16. It did not show that the following day, April 1, 1932, the treasurer had deposited an additional $30,000 in the Peoples State Bank, though a number of the city officials were personally aware of the fact. A resolution was passed on April 7, 1932, reaffirming the designation of the Bessemer National Bank and the Peoples State Bank of Bessemer as depositaries of the city's funds and providing that the deposits should be equal or nearly equal in the two banks; that each of the banks be requested to furnish the city good, sound collateral of a listed value equal to the total amount of funds that the city had on deposit, the collateral to be filed with the city clerk, subject to the approval of the common council and

the city attorney, and no collateral to be released without the consent of the common council; that the city attorney be requested to demand the desired collateral; and that such collateral be in the hands of the city clerk on or before Tuesday, April 12th; that in the event that either of the banks "fail to furnish the required collateral, the amount to be deposited shall not be greater than the collateral furnished." If neither bank could comply, the resolution provided a method for the appointment of another depositary with ability to furnish the required collateral. It further stated that the city treasurer, city clerk, city attorney and the finance committee should see that no depositary for the city of Bessemer funds have on deposit an amount in excess of the value of the collateral furnished.

On April 18, 1932, the city council again met and passed a similar resolution, but stated that the collateral must be deposited with a Federal Reserve Bank in trust for the city on or before Thursday, April 28, 1932. Re was still acting as city treasurer through his deputy at that time. His records show deposits far in excess of collateral. On April 30, 1932, the city had on deposit in the Peoples State Bank the sum of $36,465.21, while the market value of collateral was less than $7,000.

On April 4, 1932, Katherine Korpi was elected city treasurer as successor to Re. She filed a $20,000 bond with the Fidelity & Deposit Company as surety. Re, however, did not go out of office until May 2, 1932, when Miss Korpi succeeded him. On that date the city had $35,873.31 on deposit in the Peoples State Bank in the commercial account. On May 18, 1932, the Peoples State Bank closed its doors, the city having on deposit $34,211.67 in its commercial account and $3,548.75 in its interest and

coupon account, a total of $37,760.42. During the short time Miss Korpi was in office, she deposited $1,283.04, but withdrew a large amount. May 2, 1932, when Re left office, the total amount the bank had on hand to pay commercial deposits was $11,270.52. Of this amount, however, only $912.17 consisted of cash in the banking house, the balance being made up of credit items due from out-of-town banks. The insolvent bank apparently has paid no dividends to depositors, but since the time of the trial, the city has realized $11,055.53 on the securities deposited by the Peoples State Bank with the Detroit Trust Company. The latter still has on deposit for the benefit of the city securities of a market value in excess of $5,000. The exact value of these securities at the present time is not shown.

The city of Bessemer brought suit against Re for the loss of the funds through the failure of the bank, claiming that Re was negligent in making deposits in the Peoples State Bank when he knew it had not filed a bond, and had never furnished collateral sufficient in either character or amount. The trial court sustained plaintiff's contentions and held Re liable for the entire amount due the city less the amount of "ready" cash the bank had on hand when Re went out of office. He rendered a judgment on March 9, against Re in the sum of $28,096.27, against the Standard Accident Insurance Company for $20,000, with interest, aggregating $23,266.68. The case against Miss Korpi * was tried with the instant one and judgment was rendered against her for $10,575.74. However, the two cases were not consolidated. Re and his surety bring this appeal. The city filed no cross-appeal.

---

* See *City of Bessemer* v. *Korpi, post,* 190.—Reporter.

During the time Re was in office, the general business conditions in Bessemer were bad and showed the results of several years of depression. Both Duda and the city officials realized the seriousness of the situation, and Duda, acting for Re, knew he was jeopardizing the city's moneys in placing them in the Peoples State Bank. He knew that that bank had not given the bond required of it and had deposited as collateral securities of uncertain market value and insufficient in amount. Even if a question exists as to whether the Peoples State Bank was a properly designated depositary for any amounts in excess of the collateral given, the treasurer was in duty bound to use due care in making deposits. Notwithstanding the statute, 1 Comp. Laws 1929, § 1873, he had a duty not to make deposits in a bank which he knew was unsound and had not furnished adequate collateral. *City of Cozad* v. *Thompson,* 126 Neb. 79 (252 N. W. 606) ; *Onida Independent School District No. 1* v. *Groth,* 53 S. D. 458 (221 N. W. 49) ; *City of Wessington Springs* v. *Smith,* 54 S. D. 515 (223 N. W. 723) ; *Lane Independent Consolidated School District No. 1 of Jerauld County* v. *Endahl,* 55 S. D. 73 (224 N. W. 951). In *City of Estelline* v. *Calef,* 57 S. D. 592 (234 N. W. 597), the court said:

"Under these circumstances, the argument that since the city council designated Estelline State Bank as a depository of city funds, defendants should not be held liable cannot prevail. To a similar contention in *Independent School District* v. *Flittie,* 54 S. D. 526 (223 N. W. 728), this court in an opinion by Campbell, J., said:

" 'If, as a matter of fact, he (the treasurer) does have thoroughly reliable information, by reason of being an active managing officer of the depository or otherwise, that the depository is unsound and in imminent danger of insolvency, it is absurd to say that it does not

constitute a breach of official duty for him to keep his information to himself and continue to deposit the moneys intrusted to him as an officer in a depository that he knows is unsound.' ''

The record shows that the treasurer was aware of the condition of the Peoples State Bank. Duda testified that during almost the entire time he acted for Re as deputy he had very great difficulty in obtaining the collateral agreements; that he realized the weakness of the Peoples State Bank. A large payment of $24,000, due on a loan to the city, was repaid by check on the Peoples State Bank and there was considerable difficulty in clearing the check. When the cashier of the bank demanded that additional funds be deposited in that bank, Duda refused because of his knowledge of the condition of the bank and only after he had been persistently importuned by a bank official and threatened with mandamus proceedings, did he make the large deposit of $30,000. Duda testified that he had reason to believe that it was not good business on his part to make the deposit. For a time he kept the city's money in a safety deposit box in order to safeguard it. There were rumors that the bank was in bad shape and Duda's dealings with it were not satisfactory. Duda further testified he would not have placed any of his own funds in the bank from April 1, 1932, until it closed. The custodian of public funds is required to use at least the same care in their protection as he would with his own. He drew the moneys from a bank that was sound and placed them in another one that he knew was unsound. The fact that he informed the council of the deposits and that his reports were accepted would not release him from liability. See *Board of Education of Detroit* v. *Andrews,* 142 Mich. 484. The treasurer

is responsible for the negligence of his deputy and he and his surety are liable under the circumstances.

Appellants seek relief by virtue of Act No. 40, Pub. Acts 1932 (1st Ex. Sess.), and Act No. 95, Pub. Acts 1935. Act No. 40 is not applicable for the designation of the Peoples State Bank as a depositary was not made in accordance with the statute, being made before its enactment. Act No. 95, Pub. Acts 1935, was passed by the legislature subsequent to the trial of the case, but before the rendition of the judgment. It is contended that if the act released one from a liability which already existed, it would be retroactive and unconstitutional. We do not need to discuss this question as the act does not purport to release the treasurer from negligent conduct resulting in a large loss to the city. The whole tenor of the act indicates that it was the intent of the legislature to relieve custodians of public funds from their technical duty to account for moneys intrusted to them when they have properly made deposits in a designated depository. It does not relieve them from the duty to use due care in making deposits and it is because of the breach of that latter duty that the treasurer is being held liable in the instant case.

Upon being asked for additional briefs and stipulations in regard to facts, counsel have stipulated that $11,055.53 was realized by the trust company from bonds that were turned over to the city and should be used in determining final judgment to be entered in this cause. This amount so returned to the city shall be deducted from the amount due the city from the Peoples State Bank. The judgment against Re shall in no event be larger than the balance due the city after making this deduction. The balance due will still be larger than the amount of

the judgment against defendant surety. No disposition can be made in the present law action in regard to the collateral and other funds still held by the Detroit Trust Company, though it appears to be conceded that the defendant or defendants paying such judgment shall be subrogated to the rights of the city to such securities and funds in the hands of the trust company.

The case is remanded to the trial court with instructions to enter judgment in accordance with this opinion. Plaintiff will recover costs.

FEAD, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.